747 S.E.2d 436

Francina A. BARDSLEY, as Personal Representative of the Estate of Frederic William Bardsley, III, Respondent,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY and State Farm Fire & Casualty Insurance Company, Defendants,

Of whom Government Employees Insurance Company is the Appellant.

Appellate Case No. 2012–206390.

No. 27295.

Supreme Court of South Carolina.

Heard May 15, 2013.
Decided Aug. 14, 2013.

David L. Moore, Jr., of Nexsen Pruet, LLC, of Greenville, for Appellant.

William A. Coates, Carroll H. Roe, Jr. and Joseph O. Smith, all of Roe, Cassidy, Coates, & Price, PA, of Greenville, for Respondent.

Justice HEARN.

A speeding car crashed into Respondent Francina Bardsley's home, traveling through the house, striking and killing her husband, Frederic Bardsley, and causing property damage. The liability coverage of the driver, John Ludwig, was exhausted in settlement of the wrongful death action, and we are now asked to consider the impact of the collateral source rule on underinsured motorist property damage coverage where the homeowners' policy has already paid for the property damage. We hold the collateral source rule does not apply and there is no underinsured motorist property damage coverage available, and accordingly, reverse.

## FACTUAL/PROCEDURAL BACKGROUND

After leaving a wedding reception, Ludwig drove a Maserati owned by his company, System Development Integration, Inc. (SDI), at speeds of 85 to 96 miles per hour down a road with a 35 miles per hour speed limit. His car left the road, went up an embankment and became airborne, crashed into the rear of the Bardsleys' residence approximately ten feet above the ground, and struck Frederic, resulting in his immediate death. The vehicle continued through the home, crashed through the front of the house, and came to rest in the front yard. Auto Owners Insurance Company and Hartford Casualty Insurance Company insured Ludwig and SDI for $3 million in liability coverage.[1]

---

1. Auto Owners provided $1 million in automobile liability coverage, and Hartford provided $2 million in umbrella liability coverage.

The Bardsleys had $457,318.47 in homeowner's insurance coverage through State Farm. That policy provides: "If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss."

Additionally, the Bardsleys had automobile insurance through Government Employees Insurance Company (GEICO), which provided $300,000 in underinsured motorist (UIM) bodily injury coverage and $100,000 in UIM property damage coverage. The policy provides: "With respect to property damage, this insurance shall be excess over other valid and collectible insurance applicable to the damaged property."

On behalf of her husband's estate, Francina settled a wrongful death claim with Auto Owners and Hartford. They agreed to pay the policy limits of $3 million, and she agreed to sign a covenant not to execute against Ludwig, SDI, Auto Owners, and Hartford, and to resolve State Farm's subrogation claim out of the settlement proceeds. The probate court approved the settlement in an order stating the $3 million dollar payment "is to be allocated 100% to the wrongful death claim as the parties stipulate there is no valid survival claim."

State Farm paid $127,813.49 to repair the Bardsleys' home, but claimed it was entitled to reimbursement for those expenses from the $3 million settlement pursuant to its subrogation right. GEICO paid out the full $300,000 in UIM bodily injury coverage in exchange for a covenant not to execute as to any bodily injury claim. However, GEICO refused to pay any amount under the UIM property damage coverage.

Francina filed the instant declaratory judgment action against GEICO and State Farm, alleging GEICO was obligated to pay her the $100,000 in UIM property damage coverage. She also alleged State Farm wrongfully claimed it was entitled to subrogation from the $3 million settlement because those funds were allocated solely to the wrongful death claim.

Francina later reached a settlement with State Farm whereby she paid $94,424.75 from the $3 million settlement and signed a covenant not to execute, and State Farm agreed its subrogation claim was satisfied. The covenant not to execute stated: "as a direct and proximate result of the

Ludwig Incident, Plaintiff sustained $88,230.47 for damages to the Residence, $23,684.44 for damages to contents, and an additional $22,959.99 for loss of use and living expenses."

As to the remaining claim against GEICO, Francina and GEICO filed cross-motions for summary judgment. Francina asserted GEICO was obligated to pay her because the home sustained $127,813.49 in property damage and those claims were not paid out of the available insurance because State Farm was reimbursed from the settlement. She also argued the "other insurance" provision in the GEICO policy was void because it was contrary to the collateral source rule and public policy. GEICO argued the State Farm coverage had not been exhausted and thus, pursuant to the "other insurance" provision, GEICO's policy was excess to the State Farm coverage and there was no UIM property damage coverage available under the GEICO policy.

The circuit court granted summary judgment for Francina and ordered GEICO to pay Francina $100,000 for UIM property damage coverage. The court first found the "other insurance" provision was ambiguous. However, it did not state how the provision was ambiguous or provide any reasoning. The summary judgment order simply states: "GEICO's policy ... when read as a whole, is ambiguous and contains conflicting terms." The court also held the "other insurance" provision violated the collateral source rule. Specifically, it found the State Farm policy was a collateral source which GEICO could not use to decrease its obligations and found there would be no double recovery because the wrongful death claim was settled for Auto Owners' and Hartford's policy limits despite being worth more. Finally, the court did not explicitly rule on the public policy argument, finding only that "GEICO's UIM rider *may* also contravene public policy since any exclusions inconsistent with the UIM statute are void." (emphasis added). GEICO appealed, and this Court certified the appeal for review pursuant to Rule 204(b), SCACR.

## ISSUES PRESENTED

I. Did the circuit court err in finding the GEICO policy ambiguous?

II. Did the circuit court err in finding the "other insurance" provision violates public policy?

III. Did the circuit court err in holding the collateral source rule renders the "other insurance" provision invalid?

## LAW/ANALYSIS

### I. AMBIGUITY

GEICO argues the circuit court erred in holding the "other insurance" provision ambiguous because the court failed to set forth more than one way it could be reasonably understood. Francina counters that a court does not have to set out alternative meanings of a provision in order to find it ambiguous and the ambiguity here is clear on the face of the provision and from the record. We hold the circuit court erred in finding the provision ambiguous.

Stated simply, "[a] contract is ambiguous when it is capable of more than one meaning or when its meaning is unclear." *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 94, 594 S.E.2d 485, 494 (Ct.App.2004). "An ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Bruce v. Blalock*, 241 S.C. 155, 160, 127 S.E.2d 439, 441 (1962). Accordingly, when a court makes a finding of ambiguity, it must set forth either how a provision is capable of more than one meaning or is obscure in meaning. A simple finding of ambiguity, absent any reasoning, is insufficient. Without more, an appellate court is unable to review the validity of a circuit court's conclusion that a provision is ambiguous.

Furthermore, Francina asserts the provision is ambiguous "on its face," because the policy does not define "other valid and collectible insurance," and due to a conflicting provision. We find the provision is not ambiguous on its face as there is nothing inherently unclear or confusing about the term "other valid and collectible insurance." It plainly means other insurance which is in effect and from which coverage is available. Setting aside the issue of State Farm's subrogation claim, Francina collected from State Farm, and thus, it cannot

be disputed that the State Farm policy was other valid and collectible insurance.

The provision also is not ambiguous merely because its terms are undefined in the policy. It is a well-settled principle of contract interpretation that absent a contractual definition to the contrary, contract language is given its ordinary and plain meaning. *See, e.g., Dean v. Am. Fire & Cas. Co.,* 249 S.C. 39, 41, 152 S.E.2d 247, 248 (1967) ("When the language of an insurance contract is free from ambiguity, the words used must be taken and understood in their plain, ordinary and popular sense. . . ."). If policy language was rendered ambiguous simply because it was not defined, insurance policies would need to contain definitions for every word in order to avoid ambiguity, a requirement which would be absurd. To say that any word that is not defined is ambiguous is to ignore the utility of human language. We use words because they have commonly accepted meanings, and it is only when they are subject to more than one meaning as used in a particular policy that they may become ambiguous.

Finally, the provision is not rendered ambiguous by a conflicting provision. The policy contains an additional UIM provision which states "[t]here is no coverage for property damage if the insured has been compensated by insurance or otherwise," and Francina asserts that provision conflicts with the "other insurance" provision and renders it ambiguous. One interpretation of that provision would be that it bars any UIM property damage coverage under the policy where the insured receives *any* compensation from another source, even if that compensation did not cover all of the insured's damages. Under that interpretation, it would conflict with the "other insurance" provision which states an insured has UIM property damage coverage to the extent her damages exceed the coverage available from other insurance. "[C]onflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). Thus, to the extent the two provisions conflict, in order to interpret the policy in favor of the insured, we would construe the policy in line with the "other insurance" provision, the provision more favorable to

the insured. Therefore, the "other insurance" provision would remain in force, and the purportedly conflicting provision has no effect on the validity of the "other insurance" provision. Accordingly, we conclude the circuit court erred in finding the "other insurance" provision ambiguous.

## II. PUBLIC POLICY

GEICO also argues the circuit court erred in holding the "other insurance" provision violates public policy and therefore is invalid. The circuit court did not rule the provision contravened public policy, stating only that the provision "*may* also contravene public policy;" therefore, there is no ruling to appeal from. However, Francina argues this issue is an additional sustaining ground and asserts the "other insurance" provision is void as a matter of public policy because contrary to the legislative intent of the UIM statute, Section 38–77–160 of the South Carolina Code (2002). We therefore consider the issue, but find the "other insurance" provision does not violate public policy.

Section 38–77–160 requires that an insurer "offer . . . underinsured motorist coverage. . . ." An "underinsured motor vehicle" is statutorily defined as "a motor vehicle as to which there is bodily injury insurance liability . . . at the time of the accident in an amount of at least that specified in Section 38–77–140 and the amount of the insurance . . . is less than the amount of the insureds' damages." S.C.Code § 38–77–30(15) (2002). Thus, UIM property damage coverage is not statutorily mandated, and the "other insurance" provision does not conflict with the public policy expressed in section 38–77–160.

Furthermore, the provision does not deprive the insured of any coverage for which she bargained, nor would it violate a State policy of providing coverage when an injured party's property damages exceed the liability limits of the at-fault motorist, assuming such policy existed. The "other insurance" provision does nothing more than make the GEICO UIM coverage secondary to other insurance that covers the loss. It does not leave an insured without coverage. If an insured does not have any other insurance covering the property damage, the provision would have no effect and the GEICO UIM benefits would pay for the damages. If an insured has

other insurance but it does not satisfy the entire loss, the GEICO UIM coverage would pay for all of the damages beyond those satisfied by the other insurance and up to the limit of the UIM coverage.

Francina also argues the provision violates public policy in that it would eliminate UIM coverage for property damage to a home caused by a vehicle because in South Carolina home-owner's insurance policies are "stated value" policies that insure the entire value of a home. This is immaterial to whether the provision violates public policy. So long as any damage to a home would be covered by some insurance, there is no harm in UIM property damage coverage not applying. Accordingly, we find the "other insurance" provision does not violate public policy.

## III. COLLATERAL SOURCE RULE

■ Finally, GEICO argues the circuit court erred in hold-ing the collateral source rule renders the "other insurance" provision invalid. Francina contends the State Farm policy was a collateral source and thus, the collateral source rule bars GEICO from using the State Farm coverage to avoid making payments under its UIM coverage. We hold the collateral source rule does not affect the "other insurance" provision.

■ The collateral source rule provides that compensation which an injured party receives from a source wholly indepen-dent of a wrongdoer will not reduce the damages for which the wrongdoer is liable. *Citizens & S. Nat'l Bank of S.C. v. Gregory*, 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995). The rule exists because

> reducing recovery by the amount of the benefits received by the plaintiff would grant a windfall to the defendant by allowing a credit for the reasonable value of those benefits. Such credit would result in the benefits being effectively directed to the tortfeasor and from the intended party—the injured plaintiff. If there is a windfall, it is considered more just that the injured person profit rather than grant the wrongdoer relief from full responsibility for the wrongdoing.

22 Am.Jur.2d *Damages* § 392 (citations omitted).

As an initial matter, it is indisputable that the State Farm coverage was a collateral source in regards to Ludwig. Lud-

wig was clearly the tortfeasor, and thus, the collateral source rule applies to him, and he could not reduce his liability by the amount of the State Farm coverage. However, the State Farm coverage is only collateral with respect to GEICO if the collateral source rule applies to GEICO.

GEICO asserts the collateral source rule only applies to wrongdoers, it is not a wrongdoer, and therefore, the rule cannot render its "other insurance" provision invalid. Francina counters that the collateral source rule applies to any party seeking to reduce obligations to a victim as a result of contributions made by others to the victim. In other words, she asserts the only requirement for the application of the collateral source rule is that the source is wholly independent of the wrongdoer.

 We find this contention plainly contrary to our jurisprudence, which makes clear that the collateral source rule only applies to a "wrongdoer"/"tortfeasor." *See Gregory*, 320 S.C. at 92, 463 S.E.2d at 318 ("The collateral source rule provides that compensation received by an injured party from a source wholly independent of the wrongdoer will not reduce the amount of damages *owed by the wrongdoer*." (emphasis added)); *Estate of Rattenni v. Grainger*, 298 S.C. 276, 277, 379 S.E.2d 890, 890 (1989) ("South Carolina has long followed the collateral source rule that compensation received by an injured party from a source wholly independent of the wrongdoer should not be deducted from the amount of damages *owed by the wrongdoer* to the injured party." (emphasis added)); *New Found. Baptist Church v. Davis*, 257 S.C. 443, 446, 186 S.E.2d 247, 249 (1972) ("[T]he 'collateral source rule' is that which holds that total or partial compensation for injury which an injured party receives from a collateral source, wholly independent of the wrongdoer, does not operate to lessen the damages recoverable *from the wrongdoer*." (emphasis added)); *Young v. Warr*, 252 S.C. 179, 197, 165 S.E.2d 797, 806 (1969) ("Under the 'collateral source rule' *a tort feasor* has no right to any mitigation of damages because of payments or compensation received by the injured person from an independent source." (emphasis added)). Therefore, contrary to Francina's assertions, the collateral source rule does not automatically apply to GEICO, but will only apply to GEICO if it is a "wrongdoer."

We believe our existing case law establishes that GEICO, as a UIM insurer, is not a wrongdoer. We have held that UIM benefits are a collateral source, and thus, because a source must be wholly independent of the wrongdoer to be a collateral source, UIM insurance is wholly independent of the wrongdoer. *Rattenni*, 298 S.C. at 278, 379 S.E.2d at 890. Because UIM coverage is a source wholly independent of the wrongdoer, *a fortiori*, a UIM insurer is not a wrongdoer and the collateral source rule does not apply.

Furthermore, a source is wholly independent of the wrongdoer when the wrongdoer has not contributed to it and when payments to the injured party were not made on behalf of the wrongdoer. *Gregory*, 320 S.C. at 92, 463 S.E.2d at 318; *Mount v. Sea Pines Co.*, 337 S.C. 355, 357, 523 S.E.2d 464, 465 (Ct.App.1999). Ludwig did not contribute to the GEICO policy, and any payments made from it would not be made on his behalf.

Moreover, we find applying the collateral source rule against GEICO as a UIM insurer is inappropriate because extending the collateral source rule to cover GEICO as a UIM insurer would not serve the policy behind the rule. As discussed, the purpose of the collateral source rule is to give the injured party the benefit of any windfall rather than allowing the tortfeasor to profit by his wrongful acts. Here, GEICO as a UIM insurer has not acted wrongly or tortiously towards Francina and would not experience a windfall by not having to pay the UIM property damage benefits. Whether GEICO does or does not have to pay UIM benefits does not affect Ludwig. Francina signed a covenant not to execute and settled with Ludwig. Thus, Ludwig was completely released from liability and any payment of UIM benefits GEICO may make cannot affect his now extinguished liability. Furthermore, even if Francina had not settled and Ludwig was subject to additional liability to her, because Ludwig is the tortfeasor to whom the collateral source rule applies and UIM coverage is a collateral source, Ludwig's liability would not be affected by any UIM payment. *See Rattenni*, 298 S.C. at 278, 379 S.E.2d at 890 (holding that the collateral source rule bars a tortfeasor from reducing his liability by the amount of any UIM payments made to a plaintiff). Therefore, the purpose of the collateral source rule would not be served by applying it in

this situation. Instead, this is merely a contractual issue, and GEICO should be treated according to the terms of the contract.

Applying the collateral source rule to UIM insurers would also upset settled jurisprudence and create the distorted result of permitting tortfeasors to reduce their liability by the amount of any UIM payments made to a victim. To find that GEICO is a wrongdoer against whom the collateral source rule applies would presumably also mean reversal of *Rattenni* and the rule that UIM benefits are a collateral source. This is because by finding that GEICO is a wrongdoer, we would be holding that UIM benefits are *not* wholly independent of the wrongdoer, and thus, they could no longer be a collateral source. Because UIM coverage would no longer be a collateral source, the collateral source rule would no longer bar a tortfeasor from reducing his liability by the amount of the UIM payments. The collateral source rule's purpose of ensuring that any windfall goes to the victim rather than the tortfeasor would thus be circumvented.

Finally, the fact that Francina settled State Farm's subrogation claim is immaterial to whether the collateral source rule applies. Francina stipulated that State Farm covered all of her property damage, but to satisfy State Farm's subrogation claim she used the proceeds of her settlement with Auto Owners and Hartford to reimburse it for part of those payments. Her settlement of the subrogation claim does not mean she did not receive coverage and payment for her property damages. She chose to settle the subrogation claim, when she could have pursued her declaratory judgment action against State Farm. She also could have refused to settle with Auto Owners and Hartford if they would not abandon the condition that she use the settlement proceeds to satisfy State Farm's subrogation claim.

Therefore, we conclude the collateral source rule does not apply to GEICO and does not render the "other insurance" provision void. Having found the provision valid, we now apply it and find it resolves this dispute. As this Court has recognized:

One method insurance companies use to indicate whether they intend to provide primary, secondary, or other cover-

age is to include in their policies "other insurance" clauses that attempt to apportion liability among multiple insurers. An "excess" clause, the most common kind of "other insurance" clause, provides that a policy will cover only amounts exceeding the policy limits of other insurance covering the same risk to the same property.

*S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters Inc.*, 327 S.C. 207, 215, 489 S.E.2d 200, 204 (1997). Thus, by providing that "this insurance shall be excess over other valid and collectible insurance applicable to the damaged property," the GEICO policy's "other insurance" provision is an "excess" clause.

The State Farm policy provides: "If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss." This is a " 'pro rata' clause, which provides that the insurer will pay its share of the loss in the proportion its policy limits relates to the aggregate liability coverage available." *Id.* at 211, 489 S.E.2d at 202.

When two policies insure the same risk and one policy contains a pro rata clause while the other contains an excess clause, the policy with the pro rata clause provides primary coverage and the policy with the excess clause provides excess coverage. *See, e.g., Am. Interinsurance Exch. v. Commercial Union Assurance Co.*, 605 F.2d 731, 736 (4th Cir.1979) (holding that a policy with an excess clause was excess to a policy with a pro rata clause); 46 C.J.S. *Insurance* § 1543 ("Where two insurance policies afford coverage on a particular loss, and one contains a prorated clause as to the other insurance, while the other policy contains an excess clause, the policy containing the excess clause does not provide any coverage until the other policy is exhausted."). Therefore, GEICO's UIM property damage coverage is excess to the State Farm coverage, and because the State Farm policy limits were not exhausted, GEICO is not obligated to make any UIM property damage benefits payments to Francina.

## CONCLUSION

For the foregoing reasons, we reverse and order the entry of summary judgment for GEICO.

TOAL, C.J., and KITTREDGE, J., concur.

PLEICONES, J. and BEATTY, J., concurring in result only.