# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Marvin Gipson, Respondent,

v.

Coffey & McKenzie, P.A., Petitioner.

Appellate Case No. 2023-001880

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Clarendon County
Kristi F. Curtis, Circuit Court Judge

---

Opinion No. 28270
Heard January 14, 2025 – Filed March 19, 2025

---

## DISMISSED AS IMPROVIDENTLY GRANTED IN PART AND REVERSED IN PART

---

Steven Smith McKenzie and Alexander Colson Craven, both of Coffey & McKenzie, P.A., of Manning, for Petitioner.

Benjamin Allen Dunn, II, of Ormond Dunn, of Columbia, for Respondent.

---

**JUSTICE HILL:** In a negligence case, a party who loses a sum of money due to another's wrongful conduct is entitled to recover the full amount as damages. In other words, he is entitled to be made whole. The question in this case is, when the

wrongdoer returns some of the money to the wronged party, may the wronged party still seek to recover the entire amount as damages from the wrongdoer? Stating the question would seem to answer it. But the answer must wrestle with the counterintuitive principle known as the collateral source rule, a doctrine that denies a wrongdoer the benefit of monies paid not on his behalf from an independent source to which he did not contribute.

Marvin Gipson sold a piece of real estate and asked Petitioner law firm, Coffey & McKenzie, P.A. (Coffey), to close the sale for him. The sale netted Gipson proceeds of $10,036. Coffey, acting on email instructions it thought came from Gipson, wired the proceeds to a bank account in California. It turned out this account was owned by a hacker, who had accessed Gipson's email and sent wiring instructions using an email address almost identical to Gipson's. After discovering the hack, Coffey was able to recover $1,516.89 from the hacker's bank, and the firm returned this amount to Gipson.

Gipson sued Coffey for negligence. A jury awarded Gipson $10,036. The trial court denied Coffey's motion to reduce the verdict by the $1,516.89 already returned to Gipson. The court of appeals affirmed, holding the jury's damage award was reasonable, and in any event, the recovered funds derived from a collateral source. *Gipson v. Williamson*, Op. No. 2023-UP-324 (S.C. Ct. App. filed Oct. 4, 2023). We granted certiorari. Because we conclude the money returned was not from a collateral source, we reverse in part.

I.

During the trial, Gipson admitted Coffey had given him the $1,516.89, telling the jury he just wanted to be made whole. In its charge on the law, the trial court explained what this meant in terms of the damages the jury could award:

> Actual damages are to compensate the plaintiff for the plaintiff's injury or loss and to put the plaintiff as near as possible in the same position that the plaintiff was in before the incident occurred. In other words, actual damages would be the actual losses and expenses which the plaintiff has suffered because of the defendant's negligence.

This was faithful to the general measure of damages in negligence cases not involving personal injury.

We may not disturb the amount of a jury's damages award in a negligence case if it is within the range of evidence. *See Rush v. Blanchard*, 310 S.C. 375, 379, 426 S.E.2d 802, 805 (1993) ("The jury's determination of damages . . . is entitled to substantial deference."); *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 44–45, 691 S.E.2d 135, 146–47 (2010) (affirming jury's actual damages award because the injured party presented sufficient evidence to support the award of actual damages).

Here, both the trial court and the court of appeals upheld the jury's verdict, pointing out the jury knew Coffey had already paid the $1,516.89 in recovered funds to Gipson. Both courts reasoned the jury nevertheless chose to award Gipson the entire amount of the sales proceeds, and the jury was free to make that choice.

However, in his motion to reduce the verdict, Coffey was, in essence, asking that the $1,516.89 the firm gave back to Gipson be credited against the amount of the verdict. Coffey believed that if the verdict amount was not so reduced, Gipson would receive a double recovery of the $1,516.89.

So do we. The law's refusal to allow a double recovery is fundamental. *Riley v. Ford Motor Co.*, 414 S.C. 185, 195, 777 S.E.2d 824, 830 (2015); *Hawkins v. Hatton*, 10 S.C.L. (1 Nott & McC.) 318, 319 (1818) ("It is unreasonable, that a party should have more than one satisfaction for the same injury . . . ."). A trial judge may invoke this basic common law rule to ensure the verdict amount comports with the plaintiff's actual loss. The trial judge should have therefore granted Coffey's motion to reduce the verdict and prevent a double recovery.

## II.

Under the collateral source rule, the jury's verdict would not amount to a double recovery if the $1,516.89 came from an independent, collateral source. The collateral source rule states that the amount of damages a wrongdoer is legally obligated to pay the party he has injured will not be reduced by amounts a third party, independent of the wrongdoer, has paid the injured party, as long as the wrongdoer has not contributed to the funds paid and they were not paid on the wrongdoer's behalf. *In re W.B. Easton Constr. Co., Inc.*, 320 S.C. 90, 92, 436 S.E.2d 317, 318 (1995). The idea underlying the collateral source rule is that "a wrongdoer should not receive a windfall simply because the injured party received compensation from an independent source." *Atkinson v. Orkin Exterminating Co., Inc.*, 361 S.C. 156, 172, 604 S.E.2d 385, 393 (2004). Put another way, if a source unconnected to the

wrongdoer pays the loss, that fortuity does not absolve or reduce the wrongdoer's responsibility to pay for the injury he caused.

The first American stirrings of the rule appeared, well camouflaged, in the mid-nineteenth century, *see The Monticello*, 58 U.S. 152, 155–56 (1854), and debuted in our state a few decades later, *see Bridger v. Asheville & S.R. Co.*, 27 S.C. 456, 460, 3 S.E. 860, 862 (1887). Although it may appear in many contexts, the collateral source rule most often arises when the injured party has received money for the injury from one of the following sources of benefits: (1) insurance policies, *see Bardsley v. Gov't Emps. Ins. Co.*, 405 S.C. 68, 80, 747 S.E.2d 436, 442 (2013) (underinsured property damage benefits); (2) employment benefits, *Powers v. Temple*, 250 S.C. 149, 155–59, 156 S.E.2d 759, 762–63 (1967) (disability payments by employer); (3) gratuities, *New Found. Baptist Church v. Davis*, 257 S.C. 443, 446–47, 186 S.E.2d 247, 248–49 (1972) (donation of construction services); (4) social legislation benefits, *Haselden v. Davis*, 353 S.C. 481, 485, 579 S.E.2d 293, 295 (2003) (Medicaid payments). *See* Restatement (Second) of Torts § 920A cmt. c (Am. L. Inst. 1979) (listing common collateral sources).

As we have said, a source will be deemed collateral only if it has no connection to the wrongdoer. Payment made by the wrongdoer to a person he has injured is not payment from a collateral source. Restatement (Second) of Torts, *supra*, at § 920A. Nor is a payment made by a joint tortfeasor. *Id*.; *In re W.B. Easton Constr. Co., Inc.*, 320 S.C. at 92, 463 S.E.2d at 318; *see generally* Note, *Unreason in the Law of Damages: The Collateral Source Rule*, 77 Harv. L. Rev. 741 (1964); Eugene C. Covington, Jr., "Collateral Source Rule" in 1 *South Carolina Damages* at 3-1 (2004).

Coffey's return of the $1,516.89 to Gipson was not a payment from a collateral source. The $1,516.89 represented the residual balance languishing in the hacker's California bank account. The return of these funds was not a windfall. The return was made by Coffey, the wrongdoer. The source of the funds was therefore direct, not collateral. In the alternative, it could be said the source of the funds was the hacker, a joint tortfeasor.

Because we hold the collateral source rule does not apply, Coffey was entitled to have the verdict reduced by the $1,516.89 it had repaid Gipson.

Although we also granted certiorari on an issue concerning expert testimony, we dismiss the writ as to that issue as improvidently granted.

**REVERSED IN PART AND DISMISSED AS IMPROVIDENTLY GRANTED IN PART.**

**KITTREDGE, C.J., FEW, J., Acting Justices Milton Gary Kimpson and Maite D. Murphy, concur.**