734 S.E.2d 142

**Clarence RUTLAND, as Personal Representative of the Estate of Tiffanie Rutland, Petitioner,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent.**

Appellate Case No. 2010–178606.

No. 27185.

Supreme Court of South Carolina.

Heard March 7, 2012.

Decided Nov. 7, 2012.

210

J. Christopher Wilson, of Wilson, Luginbill & Kirkland, of Bamberg; Lee D. Cope, R. Alexander Murdaugh and Matthew V. Creech, all of Peters, Murdaugh, Parker, Eltzroth & Detrick, of Hampton, for Petitioner.

Richard B. Ness and Norma Jett, both of Ness & Jett, of Bamberg, for Respondent.

Justice HEARN.

Tiffanie Rutland (Tiffanie) was killed when the car in which she was riding rolled over and fell on top of her after she was partially ejected. This case presents the novel issue of whether "pre-impact fear" should be recognized as a cognizable element of damages in a survival action. We granted a writ of certiorari to review the decision of the court of appeals that pre-impact fear is not compensable in this State. *Rutland v. S.C. Dep't of Transp.*, 390 S.C. 78, 85, 700 S.E.2d 451, 455

(Ct.App.2010). Finding no evidence of conscious pain and suffering under the facts of this case, we reserve judgment on this question for another day and affirm as modified.

## FACTUAL/PROCEDURAL BACKGROUND

Tiffanie was riding in the back seat of a 1999 S–10 Chevrolet Blazer with her husband Clarence Rutland (Rutland) and their infant son when it hit accumulated water on the roadway. The driver of the Blazer, Joseph Bishop, lost control of the vehicle when it began to hydroplane, and it eventually flipped over into a nearby ditch. Tiffanie was partially ejected from the side window of the vehicle, which fell upon her when it overturned. Rutland was completely ejected through the back window of the Blazer, but he was able to walk back over to the vehicle after the accident. When he got there, he saw Tiffanie's head hanging out of the window. She made no noise and was cold and unresponsive, which lead him to believe she was already dead. Although a bystander told Rutland that Tiffanie still had a pulse, he did not believe him and assumed he just wanted Rutland to get out of the way.

Rutland settled with Bishop's insurance company for $30,000 and filed a wrongful death action against the South Carolina Department of Transportation (SCDOT) alleging negligent maintenance and repair of the stretch of highway where the accident occurred. He later amended his complaint to add General Motors (GM) as a defendant for its failure to equip the Blazer's side windows with laminated glass instead of tempered glass. Rutland subsequently settled with GM for $275,000. Including the $30,000 from Bishop's insurance company, Rutland received a total of $305,000 in settlement monies, which Rutland and GM agreed to allocate as follows: $138,000 to conscious pain and suffering under the potential (but not yet filed) survival claim and $167,000 for wrongful death. Judge Diane Goodstein approved the settlement, noting that no survival action had ever been filed, but concluding "without making any factual findings" that "there exists some evidence, however slight, that [Tiffanie] survived the crash and consciously endured pain and suffering prior to her death." Judge Goodstein's order further clarified that SCDOT would still be allowed to "argue against the allocation or apportionment of the wrongful death and survival proceeds or findings

herein, to which SCDOT does not stipulate . . . for purposes of setoff to which SCDOT may be entitled." Ultimately, Rutland never filed a survival claim against any party.

In the trial against SCDOT for wrongful death, the jury returned a verdict in the amount of $300,000. SCDOT subsequently made a motion for set-off, alleging that the entire amount of the settlement should be equitably reapportioned to the wrongful death action because there was no evidence to support the putative survival claim for which settlement funds were allocated. The trial court agreed and found that "there is not sufficient evidence from which a jury could have concluded Tiffanie Rutland experienced conscious pain and suffering of any kind before, during, or after the accident." This effectively rendered the verdict a zero dollar judgment.

Rutland appealed, arguing the trial court erred in failing to recognize Tiffanie's pre-impact fear as damages supporting the survival action and in reallocating the full amount of the settlement toward SCDOT's judgment. *Rutland,* 390 S.C. at 78, 700 S.E.2d at 451. The court of appeals affirmed, concluding that South Carolina does not recognize pre-impact fear as an element of damages and the reallocation of the settlement was proper. *Id.* at 85, 700 S.E.2d at 455. We granted certiorari to review the court of appeals' decision.

## ISSUES PRESENTED

I.  Did the court of appeals err in failing to recognize damages for pre-impact fear and in finding there was no evidence of conscious pain and suffering?

II.  Did the court of appeals err in affirming the circuit court's equitable reallocation of settlement proceeds?

## LAW/ANALYSIS

### I.  CONSCIOUS PAIN AND SUFFERING

Rutland first argues the court of appeals erred in finding there was no evidence Tiffanie experienced conscious pain and suffering.[1] In particular, Rutland argues we should

---

1.  Because Rutland never brought a survival claim against any of the defendants, any direct evidence to support that claim would have been

recognize pre-impact fright or fear as a cognizable element of damages in a survival action.[2] Because we find no evidence of conscious pain or suffering either prior to or after impact, we disagree and reserve the novel question[3] of whether South Carolina should allow recovery for pre-impact fear for another day.

In urging us to recognize pre-impact fear damages, Rutland asserts the majority of jurisdictions addressing the issue have found pre-impact fear compensable and that South Carolina should follow suit. Generally speaking, those courts have determined the timing of the impact should not determine the availability of an award for damages pertaining to mental distress because it is illogical to bar recovery for pre-impact distress when one can recover for post-impact suffering. *E.g. Solomon v. Warren*, 540 F.2d 777, 793 (5th Cir.1976) ("While in the garden variety of claims under survival statutes ... fatal injuries sustained in automobile accidents and the like[,] the usual sequence is impact followed by pain and suffering, we are unable to discern any reason based on either law or logic for rejecting a claim because in this case as to at least the part of the suffering, this sequence was reversed."); *Lin v. McDonnell Douglas Corp.*, 574 F.Supp. 1407, 1416 (S.D.N.Y. 1983) ("In several cases it has been held that a decedent's estate may recover for the decedent's pain and suffering endured *after* the injury that led to his death. From this

---

irrelevant in a wrongful death action. Nevertheless, he contends the record contains evidence to support a survival claim against GM sufficient to justify the settlement allocations and limit SCDOT's set-off to the $167,000 as allotted by GM and Rutland to the wrongful death claim.

2. In a survival action, damages may be recovered for a decedent's conscious pain and suffering prior to death. *Smalls v. S.C. Dep't of Educ.*, 339 S.C. 208, 216, 528 S.E.2d 682, 686 (Ct.App.2000). Rutland essentially argues that "pre-impact fear" should be incorporated as compensable "suffering" in a survival action.

3. We clarify that to the extent the court of appeals concluded that the question of damages for pre-impact fear was resolved by *Hoskins v. King*, 676 F.Supp.2d 441 (D.S.C.2009), it was in error. The district court acknowledged there was not direct support for this claim in South Carolina law and found the cases from other jurisdictions recognizing pre-impact fear were factually distinguishable. *Id.* at 451. Accordingly, this remains an open question in this State.

proposition, it is only a short step to the allowing of damages for a decedent's pain and suffering *before* the mortal blow and resulting from the apprehension of impending death.") (internal citations omitted), *rev'd in part on other grounds, Lin v. McDonnell Douglas Corp.,* 742 F.2d 45 (2d Cir.1984); *Monk v. Dial,* 212 Ga.App. 362, 441 S.E.2d 857, 859 (1994) ("The fright, shock, and mental suffering experienced by an individual due to the wrongful acts of negligence will authorize a recovery where attended with physical injury.... [W]e find no requirement that the physical injury precede the mental pain and suffering.") (internal citations omitted); *Nelson v. Dolan,* 230 Neb. 848, 434 N.W.2d 25, 31 (1989) ("[W]e are persuaded that there exists no sound legal or logical distinction between permitting a decedent's estate to recover as an element of damages for a decedent's conscious postinjury pain and suffering and mental anguish and permitting such an estate to recover for the conscious prefatal-injury mental anguish resulting from the apprehension and fear of impending death.").

We decline, however, to decide the issue of whether to recognize pre-impact fear as an element of damages in a survival action given the lack of evidence in this record to support the claim. Rutland offers only a recount of his personal fears and apprehensions prior to impact as proof that Tiffanie must have felt them as well. The accident appears to have occurred quickly and the evidence suggests she died instantaneously. She therefore would have had little if any time to contemplate her demise. Furthermore, Rutland offers no other evidence of Tiffanie's pain and suffering. He himself testified that he knew Tiffanie was dead at the scene and that although he was told by a bystander that she had a pulse, he did not believe him. Additionally, even assuming she had a pulse, that fact alone is not evidence of conscious pain and suffering. Rutland further stated she was not responsive when he called her name nor did she react when he rubbed her head. Based on this evidence, a jury could not reasonably have concluded Tiffanie consciously experienced any pain or suffering prior to or after impact. Thus, Rutland has not adduced sufficient evidence even if we were to recognize pre-impact fear as an element of damages in a survival action.

## II. EQUITABLE REALLOCATION

■ Rutland also argues that because there is sufficient evidence of conscious pain and suffering, the court of appeals erred in affirming the trial court's equitable reallocation of the settlement. We disagree.

■ A non-settling defendant is entitled to credit for the amount paid by another defendant who settles for the same cause of action. *Welch v. Epstein*, 342 S.C. 279, 312–13, 536 S.E.2d 408, 425 (Ct.App.2000). "The trial court's jurisdiction to set off one judgment against another is equitable in nature and should be exercised when necessary to provide justice between the parties." *Id.* at 313, 536 S.E.2d at 425. Allowing this credit prevents an injured person from obtaining a double recovery for the damage he sustained, for it is "almost universally held that there can be only one satisfaction for an injury or wrong." *Truesdale v. S.C. Highway Dept.*, 264 S.C. 221, 235, 213 S.E.2d 740, 746 (1975), *overruled on other grounds by McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985).

■ As previously discussed, we find no evidence that Tiffanie endured conscious pain and suffering, and we therefore agree with the court of appeals that the trial court acted within its discretion by reallocating the settlement funds to the wrongful death claim. Furthermore, the allocation consistently tracks our prior case law. The facts here closely resemble those of *Welch*.[4] In *Welch*, the decedent—who was in the hospital for back surgery—died of a massive pulmonary embolism following a respiratory arrest allegedly due to a narcotics overdose under the supervision of Dr. Epstein. 342 S.C. at 294, 536 S.E.2d at 416. Welch's personal representative settled with an unnamed defendant for $450,000 total, allocating $445,000 to the survival action and $5,000 to the wrongful death claim. *Id.* at 312, 536 S.E.2d at 425. The

---

4. The dissent advocates overruling *Welch* and disallowing the reallocation of settlement proceeds between different causes of action. However, Rutland has not asked us to do so, nor did he petition to argue against precedent as required by Rule 217, SCACR. We decline, as we must, to entertain arguments not presented to us. *See Langley v. Boyter*, 284 S.C. 162, 181, 325 S.E.2d 550, 561 (Ct.App.1984), *quashed on other grounds*, 286 S.C. 85, 332 S.E.2d 100 (1985) ("[A]ppellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked.").

personal representative then proceeded to a jury trial against Dr. Epstein and received a verdict of $3,000,000 for wrongful death, $28,535.88 in the survival action—which was the amount of medical expenses incurred—and $3,900,000 in punitive damages. *Id.* at 287, 536 S.E.2d at 412. The trial court, however, granted Dr. Epstein's motion for setoff and reallocated the amount of the settlement to $28,535.88 for the survival action and $421,464.12 for the wrongful death claim. *Id.* at 312, 536 S.E.2d at 425. The court of appeals affirmed, noting that the decedent had slipped into a coma at the time of his respiratory arrest and never awoke from it; thus, there was no evidence he consciously suffered so the survival claim was properly limited to medical expenses. *Id.* at 313, 536 S.E.2d at 426.

Similarly, here there is no evidence showing Tiffanie experienced conscious pain and suffering which would support a survival claim. Instead, she appears to have died instantaneously. In the absence of any support for a survival action, we find the trial court properly reallocated that portion of the settlement to the wrongful death claim.

The dissent contends this reallocation produces inequitable results by effectively reducing the judgment against SCDOT to zero, a view we do not share. Compensatory damages are intended to make the plaintiff whole, not to punish the tortfeasor. *See* 22 Am.Jur.2d Damages § 27; *see also Haselden v. Davis,* 353 S.C. 481, 486, 579 S.E.2d 293, 296 (noting the "central tenet of compensatory damages [that] awards are intended to make an injured person whole by placing him in the position enjoyed prior to the injury and no more"). Where reallocation of damages furthers that policy, we do not believe the result is inequitable. Moreover, the fact that the amount awarded by the jury for the wrongful death action— $300,000—essentially mirrors the settlement amount of $305,000 lends further support for our view that Rutland has been duly compensated for his damages. Furthermore, we note the court order approving the settlement expressly reserved the right for SCDOT to contest the allocation of the proceeds, indicating that both SCDOT and Rutland were aware that a reallocation may be made. Therefore, we find the trial court properly reallocated the settlement proceeds and set-off the judgment against SCDOT.

## CONCLUSION

Based on the foregoing, we affirm the court of appeals' opinion finding no evidence of conscious pain and suffering and upholding the equitable reallocation of the settlement. However, we modify it to clarify that the issue of whether "pre-impact" fear is a compensable element of damages remains an open question in South Carolina.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES concurring in part and dissenting in part.

I concur in part and dissent in part. I agree with the majority in declining on this record to recognize pre-impact fear as an element of damages in a survival action. However, in my view, reallocation of a plaintiff's settlement agreement from one cause of action to another is not warranted. Thus, I would reverse the circuit court's reallocation of the settlement agreement that was set off in full against Rutland's judgment against SCDOT on this wrongful death action.

Wrongful death and survival actions are different claims for different injuries. *Bennett v. Spartanburg Railway, Gas & Electric Co.*, 97 S.C. 27, 29–30, 81 S.E. 189, 189–90 (1914). In a wrongful death action, damages are for the benefit of the statutory heirs, and no damages are allowed for injuries to the decedent. *See id.* Evidence going only to the issue of the decedent's pain and suffering would be irrelevant and prejudicial and should not be admitted in an action only for wrongful death. In this case, Rutland sued SCDOT only on a wrongful death claim. Thus, it is hardly surprising that the record contains little evidence on the issue of the decedent's pre-impact fear.[5]

Prior to trial, Rutland settled his claims against GM and the at-fault driver, allocating a greater proportion of the proceeds

---

5. In *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000), discussed infra, both the wrongful death and survival actions were tried.

to the wrongful death than to the survival action. Following trial, at which only a wrongful death action was tried against the remaining defendant, SCDOT, the circuit court granted SCDOT's motion to have the settlement proceeds reallocated wholly to the wrongful death action. The resulting setoff extinguished the entire judgment against SCDOT.

In my view, reallocation of the settlement proceeds was improper. In approving reallocation, the majority relies on *Welch v. Epstein,* 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000). The *Welch* court recognized the rule that "the reduction in the [plaintiff's] judgment must be from a settlement for the same cause of action." *Welch,* 342 S.C. at 313, 536 S.E.2d at 425. It nonetheless proceeded to expand this accepted setoff principle to allow a court to disregard a plaintiff's pre-trial settlement agreement with a different tortfeasor and reallocate the settlement monies among various causes of action. Nothing in our precedents supports such a reallocation. I would overrule *Welch* to the extent it authorizes reallocation of settlement proceeds among different causes of action.[6]

Moreover, in my view equity is not served by a court's revision of a settlement agreement between the plaintiff and another tortfeasor. First, doing so essentially requires a plaintiff to defend to the court the viability of a claim she has not made. In my view, such a procedure violates the settled rule that the plaintiff may choose her defendant. *See Chester v. South Carolina Dept. of Public Safety,* 388 S.C. 343, 345–46, 698 S.E.2d 559, 560 (2010) (refusing to find the "firmly entrenched common law principle" of plaintiff's sole right to choose her defendant abrogated by the Tort Claims Act even when the result was to make a nonsettling defendant liable for a greater share of the damages).

Reallocating a settlement agreement may also inequitably reduce a plaintiff's recovery against at-fault defendants. *See McDermott, Inc. v. AmClyde,* 511 U.S. 202, 212–21, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), and sources cited therein (dis-

---

6. The majority places weight on the fact that Rutland and SCDOT were aware of the possibility of reallocation. I find this fact both unsurprising in light of the existence of *Welch* and irrelevant to my analysis. SCDOT was not a party to the settlement agreement between Rutland and GM, and the circuit court properly emphasized that SCDOT was bound by none of its terms.

cussing possible inequities of setting off judgment by full amount of settlement rather than requiring a nonsettling defendant to pay its proportionate share of damages). This case serves as an example, in that the jury's verdict represented only its determination of the wrongful death damages to the decedent's family and not her own survival damages. It is impossible to divine from that verdict what verdict a jury would have returned on the decedent's own damages in a survival action, had one been brought.

The circuit court's ex post analysis also benefits from hindsight and disregards a variety of legitimate bases for the parties' ex ante decisions. *See McDermott, supra.* For example, the parties to the settlement agreement were able to bargain on the settlement amount in light of the unsettled law regarding pre-impact fear as an element of damages in a survival action.

Further, the result of reallocation in this case is that SCDOT, an at-fault defendant, is exempted from any payment to the decedent's statutory heirs. I see no equity in this result. *See Chester, supra; McDermott,* 511 U.S. at 219, 114 S.Ct. 1461 ("The law contains no rigid rule against overcompensation [of the plaintiff]. Several doctrines, such as the collateral benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation."). Finally, the unfortunate effect of reallocation in a case such as this, where there is no suggestion of fraud or other wrongdoing by the plaintiff, is to discourage plaintiffs from settling and encourage joint tortfeasors to litigate, contrary to our strong public policy favoring settlement. *See Chester,* 388 S.C. at 346, 698 S.E.2d at 560.

Thus, in my view, the trial court erred when it reallocated the settlement. I therefore respectfully dissent from that portion of the majority opinion approving reallocation of the settlement in favor of SCDOT.