# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Laura Riley, as the Personal Representative of the Estate of Benjamin Riley, Petitioner,

v.

Ford Motor Company, Respondent.

Appellate Case No. 2014-001192

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Bamberg County
Doyet A. Early, III, Circuit Court Judge

---

Opinion No. 27575
Heard June 16, 2015 – Filed September 30, 2015

---

## REVERSED

---

Ronnie L. Crosby, of Hampton; and Daniel E. Henderson and Matthew V. Creech, both of Ridgeland, all of Peters Murdaugh, Parker, Eltzroth & Detrick, PA, Petitioner.

C. Mitchell Brown, A. Mattison Bogan, and Michael J. Anzelmo, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and Curtis L. Ott and Laura W. Jordan, both of Gallivan, White & Boyd, PA, of Columbia, for Respondent.

---

**JUSTICE KITTREDGE:** This products liability action arose following the death of Benjamin Riley, who was killed in a motor vehicle accident involving a negligently designed door-latch system in his 1998 Ford F-150 pickup truck. Petitioner Laura Riley, as the Personal Representative of the Estate, filed suit against Respondent Ford Motor Company and the at-fault driver, Andrew Marshall Carter, II.  Carter settled with the Estate for $25,000, with $20,000 allocated to the survival claim and $5,000 allocated to the wrongful death claim.  Petitioner and Ford proceeded to trial on the wrongful death claim.  The jury returned a verdict for Petitioner in the amount of $300,000.  The trial court granted a *nisi additur* of $600,000, bringing the judgment to $900,000.

Ford appealed.  The court of appeals upheld the finding of liability but reversed the trial court as to *nisi additur*, as well as the allocation and setoff of settlement proceeds.  *Riley v. Ford Motor Co.*, 408 S.C. 1, 757 S.E.2d 422 (Ct. App. 2014).  We issued a writ of certiorari to review the decision of the court of appeals.[1]  We reverse the court of appeals and reinstate the judgment of the trial court.

## I.

This case arises from an automobile accident that occurred in August 2007 and resulted in the death of Benjamin Riley, the Sheriff of Jasper County.  The facts of the accident are not in dispute and are essentially as follows: Riley was driving a Ford F-150 pickup truck on S.C. 231 just south of Bamberg when Carter, a sixteen-year-old driver who was on his way home from school, pulled out in front of him.  Riley swerved in an attempt to avoid Carter's vehicle, but a collision ensued, causing the driver's door of Riley's pickup to open.  The impact of the collision sent Riley's pickup truck crashing into a nearby tree; Riley was ejected from the vehicle and thereafter died from the resulting injuries.

Petitioner Laura Riley (Riley's widow), as Personal Representative of the Estate, filed survival and wrongful death claims against Carter and Ford.  Specifically, Petitioner alleged Carter was negligent for failing to yield the right-of-way and that Ford defectively designed the door-latch system in Riley's F-150, which allowed the door to open upon impact, and that Riley would not have died had he not been

---

[1] Ford also appealed the trial court's denial of its JNOV motion, which the court of appeals affirmed.  *Riley v. Ford Motor Co.*, 408 S.C. 1, 13, 757 S.E.2d 422, 429 (Ct. App. 2014).  Ford did not petition this Court for a writ of certiorari from this aspect of the court of appeals' decision, so the JNOV issue is not before the Court.

ejected from the vehicle.  Petitioner settled with Carter for $25,000, agreeing to allocate $20,000 to the survival claim and $5,000 to the wrongful death claim.  In April 2010, the settlement was approved by the trial judge, and the claims against Carter were dismissed.

The case against Ford proceeded to trial in September 2011.  At trial, evidence of post-collision conscious pain and suffering was presented;[2] however, Petitioner withdrew the survival claim mid-trial, and only the wrongful death claim was submitted to the jury.  The jury returned a verdict for Petitioner in the amount of $300,000 in actual damages, and although the jury also found there was clear and convincing evidence that Ford's conduct rose to the level of willful, wanton, or reckless, the jury ultimately declined to award any punitive damages.

Thereafter, Petitioner sought a new trial *nisi additur*, which the trial court granted in the amount of $600,000, bringing the total recovery to $900,000.  Additionally, Ford moved for JNOV, and in the alternative, to offset the full $25,000 amount of the prior settlement against the jury's verdict in the wrongful death action, arguing post-verdict settlement reallocations are permitted in South Carolina and that such a reallocation was appropriate in this case because Petitioner "voluntarily withdrew the survival claim during trial."  The trial court denied both motions.

## II.

Ford appealed.  The court of appeals reversed, finding the trial court erred in denying Ford's motion for setoff and in granting the Estate's motion for a new trial *nisi additur*.  Specifically, as to the new trial *nisi additur*, the court of appeals stated "the trial court's mere disagreement with the jury's determination of the proper amount of [] damages is not a compelling reason for granting additur," and the court of appeals found it was inappropriate for the trial court to "impose its will on a party by substituting its judgment for that of the jury."  *Id*. at 19–20, 757 S.E.2d at 432–33.  The court of appeals acknowledged that the jury's $300,000 verdict was only slightly more than the Estate's total economic loss, despite the Estate's extensive presentation of compelling evidence of noneconomic damages, and that Ford's trial strategy was not to "actively contest" the Estate's damages but instead to focus its efforts on the issue of liability.  The court of appeals nevertheless found that because the jury must have awarded *some* amount in

---

[2] An eyewitness to the accident saw Riley face-down in the bushes and heard a "gasping sound" immediately after the wreck.

noneconomic damages, no "compelling reason" existed for the trial court to "invade the jury's province" by granting a new trial *nisi additur*. *Id*. at 19 n.10, 757 S.E.2d at 432 n.10. Thus, the court of appeals reversed the additur award and reinstated the jury's $300,000 verdict.

Regarding setoff, the court of appeals found there was evidence in the record to support a survival action against the other driver and that allocating a portion of the settlement to the survival claim "makes sense." The court of appeals also acknowledged that $20,000 was a reasonable amount for the other driver to pay to settle the survival claim on the facts of this case. Nevertheless, purportedly relying upon this Court's decision in *Rutland v. South Carolina Department of Transportation*, 400 S.C. 209, 734 S.E.2d 142 (2012), the court of appeals determined it was appropriate for an appellate court to reevaluate the agreed-upon, and court-approved, settlement allocation, stating:

> [W]hen an agreed-upon allocation of settlement proceeds is not reasonably based on the evidence and does not fairly advance the policy of preventing double-recovery, a non-settling defendant who is entitled to a setoff but was not involved in the settlement negotiation is entitled to have the court consider reallocating the settlement proceeds.[3]

*Id*. at 16–17, 757 S.E.2d at 431.

The court of appeals determined a "fair allocation" of the Estate's settlement with the other driver was to apportion $5,000 to the survival claim and $20,000 to the wrongful death claim, in essence flipping the allocation the settling parties reached and the allocation the trial court approved. *Id*. at 17, 757 S.E.2d at 431. The court of appeals reasoned reapportionment was appropriate because Ford was not a party to the settlement negotiations between Petitioner and the other driver and because the court of appeals felt "allocating eighty percent of the settlement to survival is not reasonable." *Id*. at 15, 757 S.E.2d at 430. The court of appeals did not question the actual amount ($20,000) originally allocated to the survival action but reexamined only the percentage breakdown. Essentially, the court of appeals decided it was within the province of a reviewing court to evaluate the

---

[3] We note the court of appeals' decision includes no discussion of how or why the agreed-upon settlement allocation was not "reasonably based on the evidence" or how it ran afoul of the public policy preventing a plaintiff's double recovery.

reasonableness of not only the dollar amounts but also the relative percentage of settlement proceeds assigned to each claim. In so holding, the court of appeals stated, "We hold that in the context of a non-settling defendant's claim for setoff, the court should examine whether the percentages allocated to one claim or the other by the settling parties are reasonable. If the allocation is not reasonable, the court may reallocate the funds." *Id*. at 16, 757 S.E.2d at 430. Based on these findings, the court of appeals held Ford was entitled to offset the increased amount of $20,000 against the jury's verdict in the wrongful death action.

## III.

Petitioner urges this Court to reverse the court of appeals' decision on the basis that it is a departure from well-established law concerning *nisi additur* and that the court of appeals erred in modifying the negotiated, court-approved settlement allocation and in finding Ford was entitled to offset the amount of $20,000. We agree and address each issue in turn.

## A. New Trial *Nisi Additur*

Petitioner argues the court of appeals erred in reversing the trial court's order granting a new trial *nisi additur* because the trial court's decision was an appropriate exercise of discretion and was supported by compelling reasons. We agree.

"When a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial judge must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Allstate Ins. Co. v. Durham*, 314 S.C. 529, 530–31, 431 S.E.2d 557, 558 (1993) (citing *Easler v. Hejaz Temple,* 285 S.C. 348, 356, 329 S.E.2d 753, 758 (1985)). "When the verdict indicates that the jury was unduly liberal or conservative in its view of the damages, the trial judge *alone* has the power to [alter] the verdict by the granting of a new trial *nisi*." *Id*. at 531, 431 S.E.2d at 558 (citing *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993)). "However, when the verdict is so grossly excessive or inadequate that the amount awarded is so shockingly disproportionate to the injuries as to indicate that the jury was moved or actuated by passion, caprice, prejudice, or other considerations not found in the evidence, it becomes the duty of the trial judge and this Court to set aside the verdict absolutely." *Id*. (citing *Easler,* 285 S.C. at 356, 329 S.E.2d at 758).

"'Motions for a new trial on the ground of either excessiveness or inadequacy are addressed to the sound discretion of the trial judge.'" *Graham v. Whitaker*, 282 S.C. 393, 401, 321 S.E.2d 40, 45 (1984) (quoting *Toole v. Toole,* 260 S.C. 235, 195 S.E.2d 389 (1973)). "'His exercise of such discretion, however, is not absolute and it is the duty of this Court in a proper case to review and determine whether there has been an abuse of discretion amounting to error of law.'" *Id*. at 401–02, 321 S.E.2d at 45. "Compelling reasons" must be given to justify the trial court invading the jury's province in this manner. *Bailey v. Peacock*, 318 S.C. 13, 14, 455 S.E.2d 690, 691 (1995) (citing *Pelican Bldg. Ctrs. v. Dutton,* 311 S.C. 56, 61, 427 S.E.2d 673, 676 (1993)).

At trial, Petitioner presented expert testimony that the Riley family suffered more than $228,000 in economic damages as a result of Riley's death. Petitioner also presented numerous witnesses who testified as to noneconomic damages suffered by his surviving family, all of whom testified about the type of caring and loving husband and father Riley was. Indeed, the evidence of noneconomic damages was so compelling and pervasive that the trial judge eventually ruled it had become cumulative under Rule 403, SCRE. During an *in camera* discussion regarding whether the trial court would permit further witnesses to testify about noneconomic damages, the experienced trial judge stated:

> I've been doing this a long time and I can't remember a trial that I was either involved in as a lawyer or as a judge where I've heard more glowing testimony and genuine testimony about the person's life and his service to his family and to the community. I mean, it's been—it's been very touching, to be quite frank with you; so tell me what else you want to do other than what you have already done.

In his order granting the motion for a new trial *nisi additur*, the trial judge found the jury's verdict of $300,000 was inadequate in light of the evidence and testimony presented at trial. The trial judge stated:

> The evidence at trial showed that Benjamin Riley was a loving father and husband and a central figure not only in the lives of his family, but also within his church and his community. During the trial of this case, [Petitioner] Laura Riley testified, as did three of Riley's five adult children. . . . The family's testimony established Riley's support, both moral and economic, of his family, as well as genuine

love, affection, esteem, and regard held by the testifying beneficiaries of the Estate of the decedent. The testimony established that throughout their married lives, Riley and his wife were "best friends" and companions. The family's testimony as well as that of non-family members, left no question as to the grief, emotional turmoil, and loss suffered. Their testimony showed that this family of beneficiaries, perhaps more than most wrongful death beneficiaries, suffered great loss under this element of wrongful death damages.

In evaluating this issue on appeal, the court of appeals ignored the applicable abuse-of-discretion standard of review, instead focusing its inquiry on a *de novo* evaluation of whether, in its view, there was sufficient justification for "invading the jury's province." This was error. Applying the correct standard of review to the trial court's findings, we find the trial court did not abuse its discretion in granting an additur of $600,000. In his order granting the motion, the trial judge gave a thorough recitation of the "uncontested, and emotionally compelling" evidence, including testimony and supporting exhibits that demonstrated both the pecuniary losses suffered by the Riley family and also the noneconomic compensable elements of loss that are recoverable in a wrongful death action. *See Garner v. Houck*, 312 S.C. 481, 488, 435 S.E.2d 847, 850 (1993) (finding damages for mental shock and suffering, wounded feelings, grief, sorrow, and loss of society and companionship are recoverable in a wrongful death action) (citing *Smith v. Wells,* 258 S.C. 316, 188 S.E.2d 470 (1972)). It is clear from the record that the trial judge found the jury's verdict to be inadequate, yet not shockingly so, such that a new trial absolute would be warranted. In light of the trial judge's correct application of the law and the extensive evidence on the proper elements of damages in a wrongful death action, the trial court did not abuse its discretion in granting the *nisi additur*.

Further, it appears the decision of the court of appeals was based on the belief that a *nisi additur* is not available where any amount of noneconomic damages is awarded. This was an error of law. While the presence of some amount of noneconomic damages may be a factor mitigating against the granting of a new trial *nisi additur*, there is no categorical rule prohibiting a *nisi additur* where a jury verdict includes some measure of noneconomic damages. The court of appeals' new *nisi additur* categorical rule formulation would remove the discretion vested in trial court judges. Here, the trial court judge was well aware that the jury verdict included an award of noneconomic damages, yet he articulated compelling circumstances that he believed warranted the *nisi additur*. Under this record, we

cannot say the trial judge abused his discretion. We reverse the court of appeals and reinstate the trial court's grant of the new trial *nisi additur*.

## B. Reallocation and Setoff of Settlement Proceeds

Petitioner argues the court of appeals erred in the reallocation and setoff of settlement proceeds. We agree.

"A non-settling defendant is entitled to credit for the amount paid by another defendant who settles for the same cause of action." *Rutland v. S.C. Dep't of Transp.*, 400 S.C. 209, 216, 734 S.E.2d 142, 145 (2012) (citing *Welch v. Epstein*, 342 S.C. 279, 312–13, 536 S.E.2d 408, 425 (Ct.App.2000)). The right to setoff has existed at common law in South Carolina for over 100 years. *See, e.g.*, *Rookard v. Atlanta & Charlotte Air Line Ry. Co.*, 89 S.C. 371, 71 S.E. 992, 995 (1911) (stating "[t]he jurisdiction of the court to set off one judgment against another is equitable in its nature, and should be exercised so as to do justice between parties" and noting the court's ability to order setoff "is not founded on any statute or fixed rule of court, but grows out of the inherent equitable jurisdiction which the court exercises over suitors in it"). Allowing setoff "prevents an injured person from obtaining a double recovery for the damage he sustained, for it is almost universally held that there can be only one satisfaction for an injury or wrong." *Rutland*, 400 S.C. at 216, 734 S.E.2d at 145 (citation and internal quotations omitted).

In 1988, these equitable principles were codified as part of the South Carolina Contribution Among Tortfeasors Act (the Act), S.C. Code Ann. §§ 15-38-10 to -70 (2005 & Supp. 2014). Specifically, section 15-38-50 provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

> (2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

S.C. Code Ann. § 15-38-50. Thus, the Act represents the Legislature's determination of the proper balance between preventing double-recovery and South Carolina's "strong public policy favoring the settlement of disputes." *Chester v. S.C. Dep't of Pub. Safety*, 388 S.C. 343, 698 S.E.2d 559 (2010).

Despite a defendant's entitlement to setoff, whether at common law or under section 15-38-50, any "reduction in the judgment must be from a settlement for the same cause of action." *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 113, 498 S.E.2d 395, 407 (Ct. App. 1998) (citing *Ward v. Epting,* 290 S.C. 547, 351 S.E.2d 867 (Ct. App. 1986) (refusing to apply settlement for pain and suffering cause of action to judgment in wrongful death action)). Thus, where a settlement involves more than one claim, the allocation of settlement proceeds between various causes of action impacts the amount a non-settling defendant may be entitled to offset.

There is no real dispute that Ford is entitled to offset whatever portion of the $25,000 is attributable to the wrongful death claim. Indeed, the Estate concedes as much in its brief. Thus, the real dispute is whether the court of appeals erred in reapportioning the $25,000 settlement between the survival and wrongful death claims.

We find the court of appeals erred in reapportioning the settlement proceeds on the sole basis that the particular agreed-upon allocation between the survival and wrongful death claims did not seem to be, in the court of appeals' view, proportionately reasonable. Given the totality of the circumstances, and particularly in light of the reasonableness of the overall amount of $20,000 and the evidence in the record of Riley's conscious pain and suffering, we believe it was error to disturb the settling parties' agreed-upon allocation solely because the apportionment may have been advantageous to the Estate. *See In re Wells*, 43 S.C. 477, 21 S.E. 334, 337 (1895) (finding the party seeking departure from the application of standard set-off rules bears the burden of proof and must be "prepared to justify such [reallocation] as fair, bona fide, and just," particularly where "there is an executed contract between [the parties], which is not contested as between them but which is sought to be invalidated by third parties"); *see also Lard v. AM/FM Ohio, Inc.*, 901 N.E.2d 1006, 1018 (Ill. App. 2009) ("Although the

manipulation of an allocation can be evidence of bad faith in a settlement negotiation, it is not *per se* bad faith to engage in the advantageous apportioning of a settlement.") (citation omitted).

Indeed, we agree with the approach taken by the Illinois Court of Appeals, which stated:

> A plaintiff who enters into a settlement with a defendant gains a position of control and acquires leverage in relation to a nonsettling defendant. This posture is reflected in the plaintiff's ability to apportion the settlement proceeds in the manner most advantageous to it. Settlements are not designed to benefit nonsettling third parties. They are instead created by the settling parties in the interests of these parties. If the position of a nonsettling defendant is worsened by the terms of a settlement, this is the consequence of a refusal to settle. A defendant who fails to bargain is not rewarded with the privilege of fashioning and ultimately extracting a benefit from the decisions of those who do.

*Lard*, 901 N.E.2d at 1019 (citing *Muro v. Abel Freight Lines, Inc.*, 669 N.E.2d 1217 (Ill. App. 1996)).

The court of appeals erred in accepting Ford's invitation to reapportion the agreed-upon allocation of settlement proceeds based on the purported impropriety of an apportionment favoring the Estate. Settling parties are naturally going to allocate settlement proceeds in a manner that serves their best interests. That fact alone is insufficient to justify appellate reapportionment for the sole purpose of benefitting Ford. Here, the trial court-approved allocation is unquestionably reasonable under the facts. In fact, Ford has never suggested that $20,000 for the survival action is unreasonable. Ford's effort to invalidate the allocation of settlement proceeds based on a "percentages" analysis is manifestly without merit under these circumstances. We reverse the court of appeals and hold that Ford is entitled to set off only the $5,000 the settlement agreement apportioned to the wrongful death claim.

## IV.

We reverse the court of appeals.  The case is remanded to the trial court for further proceedings pursuant to the granting of the new trial *nisi additur* motion.


**REVERSED AND REMANDED.**

**PLEICONES, Acting Chief Justice,  BEATTY, HEARN, JJ., and Acting Justice James E. Moore, concur.**