# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Mark Green, as Personal Representative of The Estate of
Randall M. Green and Ann Green, Respondent,

v.

Wayne B. Bauerle, M.D. and Wayne B. Bauerle M.D.,
P.C., Appellants.

Appellate Case No. 2020-000046

———————

Appeal From Horry County
Steven H. John, Circuit Court Judge

———————

Opinion No. 6029
Heard December 6, 2022 – Filed October 4, 2023

———————

**AFFIRMED**

———————

John B. McCutcheon, Jr., of Thompson & Henry, PA, of
Conway; Lisa Arlene Thomas, of Richardson Plowden &
Robinson, PA, of Myrtle Beach; and Andrew F.
Lindemann, of Lindemann Law Firm, P.A., of Columbia,
all for Appellants.

L. Morgan Martin, of Law Offices of L. Morgan Martin,
P.A., of Conway; O. Grady Query, of Query Sautter &
Associates, LLC, of Charleston; and Cristin Ann
Uricchio, of Uricchio Law Firm, of Charleston, all for
Respondent.

———————

**MCDONALD, J.:** This is the second round of appeals from the circuit court's order allocating the setoffs to which the non-settling defendants are entitled in this tragic case. Following the supreme court's reversal and remand of the circuit court's 80/20 allocation, Wayne B. Bauerle, M.D. and Wayne B. Bauerle, M.D., P.C. (collectively, Dr. Bauerle) have now appealed the circuit court's order equally allocating a prior settlement to set off the jury verdicts returned for Ann and Randall "Randy" Green (the Greens). Dr. Bauerle argues the circuit court erred in (1) finding the Greens intended that their settlement with Grand Strand Regional Medical Center (Grand Strand) be allocated equally between them; (2) calculating Mrs. Green's loss of consortium damages in a manner that exceeded the jury's verdict in order to find the Greens' proposed allocation did not result in a double recovery; (3) failing to treat the verdicts and settlement proceeds as marital or joint property; and (4) failing to apply controlling precedent. We affirm.

**Facts and Procedural History**

On April 17, 2004, the Greens were involved in a motor vehicle accident caused by the negligence of another driver. The Greens sustained serious bodily injuries and were transported to Grand Strand for treatment. Mr. Green's injuries included a fractured and dislocated right hip, as well as a severe laceration to his right arm that transected the muscle, nerves, and two arteries.

Dr. Bauerle, the on-call orthopedic surgeon, responded to the emergency room to treat Mr. Green's injured hip. Although Dr. Bauerle was told that the ER physician had already reduced the hip, he requested a CT scan to ensure the reduction was proper and check for bone fragments that might require immediate surgery. He did so despite the fact that Mr. Green was in the holding area for the operating room waiting to undergo surgery to repair his lacerated forearm.[1] Following the CT scan, Mr. Green went into cardiac arrest. Although Mr. Green was successfully resuscitated, he sustained permeant damage to his spinal cord and was paralyzed

---

[1] Experts testified it was a "dramatic" deviation from the standard of care to take a "totally unstable" patient out of pre-op where his vital signs were being closely monitored and controlled by an anesthesiologist who could prevent and stop a cardiac arrest. Dr. Bauerle conceded he would not have removed Mr. Green for the scan had he been aware of his instability. Dr. Bauerle's own expert agreed Dr. Bauerle should have checked Mr. Green's vital signs and chart; he further admitted no doctor should issue orders without confirming a patient's condition.

from the waist down.  Carolinas Medical Response (CMR) later transported Mr. Green to the Medical University of South Carolina.

The Greens settled with the at-fault driver's liability carrier and their underinsured motorist (UIM) carrier.[2]  They also brought suit against Grand Strand, Dr. Bauerle, and CMR for medical malpractice and loss of consortium.  The Greens eventually settled or dismissed their claims against all defendants except Dr. Bauerle.[3]

A jury subsequently awarded Mr. Green $2.3 million on his medical malpractice claim and Mrs. Green $550,000 for loss of consortium.  Dr. Bauerle filed a motion for setoff, which the circuit court granted, but only as to the proceeds of the Greens' settlements with Grand Strand and CMS.  Because the Greens and the settling defendants did not specifically allocate the $2.025 million in settlement proceeds, the circuit court allocated the settlements based on the jury's distribution of the actual damages awarded:

> [T]he jury found for Mr. and Mrs. Green for a combined verdict of $2.85 million against the Defendants.  The jury awarded Mr. Green $2.3 million of the total $2.85 million verdict, or 80.70% of the total verdict.  The jury awarded Mrs. Green $550,000 or 19.30% of the total verdict.  Using that very allocation, this Court rules that the $2 million settlement with Grand Strand shall off set the verdict for Mr. Green in the amount of $1,614,035.09 and the verdict for Mrs. Green in the amount of $385,694.91.  Likewise, the settlement between Plaintiffs and [CMR] shall off set the verdict for Mr. Green in the amount of $20,175.44 and the verdict for Mrs. Green in the amount of $4,824.56.[4]

---

[2] Mr. Green settled with the at-fault driver for $100,000, and received $150,000 in the settlement of his UIM claim.  Mrs. Green settled with the at-fault driver for $100,000, and received $75,000 in the settlement of her UIM claim.

[3] Grand Strand settled all claims with the Greens for $2,000,000; CMR settled for $25,000.

[4] In 2014, Dr. Bauerle's insurer made an initial payment of $415,789.47 in partial satisfaction of Mr. Green's judgment.  The remaining judgments include awards of $250,000.00 to Mr. Green and $159,480.53 to Mrs. Green.

The Greens and Dr. Bauerle filed cross-appeals.[5] *Green v. Bauerle*, Op. No. 2016-UP-052 (S.C. Ct. App. filed Feb. 3, 2016). The Greens argued the circuit court erred in (1) finding section 15-38-50 of the South Carolina Code (2005 and Supp. 2022) mandated setoff; (2) finding it necessary to set off the entire amounts paid by Grand Strand and CMS; and (3) allocating the Grand Strand and CMS settlement proceeds between the Greens' claims. *Id.* at 2. In the cross-appeal, Dr. Bauerle argued the circuit court erred in denying setoff as to the funds paid by the at-fault driver and the Greens' UIM carrier. *Id.* This court affirmed the circuit court's order in an unpublished opinion. *Id.* at 2–3.

After granting the cross-petitions for writs of certiorari, our supreme court found "the jury verdicts are not subject to setoff by the settlements paid by the at-fault driver." *Green v. Bauerle*, Op. No. 2019-MO-026, at 2 (S.C. Sup. Ct. filed May 29, 2019). Additionally, the supreme court held the circuit court "properly found the jury verdicts were subject to setoff with regard to the settlement paid by [Grand Strand]."[6] *Id.* As to the calculation of the setoffs, the supreme court explained:

> The law requires the total amount paid by Grand Strand to be set off from the verdicts; however, we conclude the trial court's determination of the specific amounts to be set off from the verdicts was arbitrary, as the determination was based solely upon the ratios both verdicts bore to the whole. The setoffs should be calculated based upon the entirety of relevant circumstances, not solely upon such a formula. While these ratios may well be relevant to the ultimate determination of a proper setoff, they are not necessarily the sole relevant circumstance. Therefore, we vacate the trial court's order on this particular point and remand this issue to the trial court and direct it to

---

[5] During the pendency of this appeal, Dr. Bauerle filed a motion seeking leave to deposit funds with the Horry County Clerk of Court and to release judgment liens against certain real property in Horry County. The circuit court granted this motion, specifically noting "the release of the judgment liens has no effect on any issues currently on appeal including the amount of the verdicts to which the Plaintiffs are ultimately entitled, which will be determined by the appellate courts."

[6] Before the supreme court, the Greens did not pursue their challenge regarding the allocation of the CMR settlement. *Id.* at 4.

convene a hearing to consider all relevant circumstances. The trial court shall then issue an order setting forth the amounts to be set off from the two verdicts.

*Id.* at 6. On remand, the circuit court held the hearing as directed and found "each of the Plaintiffs' verdicts shall be reduced by $1 million" and "[a]pplication of a $1 million setoff will reduce Mrs. Green's judgment to zero." The circuit court then set off Mr. Green's verdict by $1 million from the Grand Strand settlement and $20,175 from the CMR settlement.[7]

Dr. Bauerle moved to alter or amend pursuant to Rule 59(e), SCRCP, and the circuit court denied this motion. Dr. Bauerle timely appealed, and the Greens' request for Rule 204(b), SCACR certification was denied.

**Law and Analysis**

"The right to setoff has existed at common law in South Carolina for over 100 years." *Riley v. Ford Motor Co.*, 414 S.C. 185, 195, 777 S.E.2d 824, 830 (2015). The "jurisdiction of the court to set off one judgment against another is equitable in its nature, and should be exercised so as to do justice between parties." *Id.* (quoting *Rookard v. Atlanta & Charlotte Air Line Ry. Co.*, 89 S.C. 371, 71 S.E. 992, 995 (1911)); *see also Church v. McGee*, 391 S.C. 334, 342, 705 S.E.2d 481, 485 (Ct. App. 2011) (stating setoff is equitable in nature, and thus an appellate court may find facts in accordance with its own view of the preponderance of the evidence). Section 15-38-50 of the South Carolina Code (2005) "grants the [trial] court no discretion . . . in applying a set-off." *Green*, Op. No. 2019-MO-026, at 6 (quoting *Smith v. Widener*, 397 S.C. 468, 472, 724 S.E.2d 188, 190 (Ct. App. 2012)).

**I. Allocation of Settlement Proceeds**

Dr. Bauerle argues the circuit court erred in finding the Greens intended that their $2 million settlement with Grand Strand be allocated equally between them. He claims the circuit court referenced only the arguments of counsel as "evidence" to

---

[7] Mark Green, personal representative of the Estate of Randall M. Green (the Estate), was substituted by consent order for Mr. Green, who died at the age of sixty-nine on June 22, 2019.

support its 50/50 allocation while erroneously rejecting the competent, probative evidence that did not support such a split. We disagree.

"A non-settling defendant is entitled to credit for the amount paid by another defendant who settles for the same cause of action." *Rutland v. S.C. Dep't of Transp.*, 400 S.C. 209, 216, 734 S.E.2d 142, 145 (2012). "Allowing setoff 'prevents an injured person from obtaining a double recovery for the damage he sustained, for it is almost universally held that there can be only one satisfaction for an injury or wrong.'" *Riley*, 414 S.C. at 195, 777 S.E.2d at 830 (quoting *Rutland*, 400 S.C. at 216, 734 S.E.2d at 145).

In 1988, these equitable principles were codified through the Uniform Contribution Among Tortfeasors Act (the Act). S.C. Code Ann. §§ 15-38-10 to -70 (2005 and Supp. 2022). Section 15-38-50 provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

When a prior settlement involves compensation for the same injury, the nonsettling defendant's right to a setoff arises by operation of law under section 15-38-50. *Ellis v. Oliver*, 335 S.C. 106, 112–13, 515 S.E.2d 268, 271–72 (Ct. App. 1999). "However, our case law favors a plaintiff's ability to apportion settlement proceeds 'in the manner most advantageous to it.'" *Jolly v. Gen. Elec. Co.*, 435 S.C. 607, 666–67, 869 S.E.2d 819, 851 (Ct. App. 2021) (quoting *Riley*, 414 S.C. at 197, 777 S.E.2d at 831).

Our supreme court's opinion in *Riley* provides guidance for the setoff analysis and reflects "the proper balance between preventing double-recovery and South

Carolina's 'strong public policy favoring the settlement of disputes.'" *Riley*, 414 S.C. at 196, 777 S.E.2d at 830 (quoting *Chester v. S.C. Dep't of Pub. Safety*, 388 S.C. 343, 346, 698 S.E.2d 559, 560 (2010)). Agreeing with the approach taken by the Illinois Court of Appeals, the supreme court explained:

> A plaintiff who enters into a settlement with a defendant gains a position of control and acquires leverage in relation to a nonsettling defendant. This posture is reflected in the plaintiff's ability to apportion the settlement proceeds in the manner most advantageous to it. Settlements are not designed to benefit nonsettling third parties. They are instead created by the settling parties in the interests of these parties. If the position of a nonsettling party is worsened by the terms of a settlement, this is a consequence of the refusal to settle. A defendant who fails to bargain is not rewarded with the privilege of fashioning and ultimately extracting a benefit from the decisions of those who do.

*Id.* at 197, 777 S.E.2d at 831 (quoting *Lard v. AM/FM Ohio*, 901 N.E.2d 1006, 1019 (Ill. App. 2009)).

Dr. Bauerle asserts there is no evidence in the record to support a finding that the Greens intended to allocate the $2 million Grand Strand settlement equally. He additionally argues that an April 14, 2016 consent order permitting the partial release of funds deposited with the clerk of court (the Consent Order) supports his position that the Greens did not intend to share equally in the settlement funds. The Consent Order followed the Greens' motion "for an Order directing that the sum of $228,505.69 be paid by the Clerk of Court to the Plaintiffs Randall Green and Ann Green." The Consent Order further provided "the judgment in favor of the Plaintiff Randall Green is partially satisfied by the payment of $163,622.01 and the judgment in favor of the Plaintiff Ann Green is partially satisfied by the payment of $64,883.68."

We are unable to find persuasive evidence in the record to support Dr. Bauerle's argument that the Greens did not intend to allocate the $2 million settlement equally. The language of the settlement agreement reflects that the $2 million was paid jointly to the Greens and was not otherwise allocated between them. The Greens submit that their decision not to specifically allocate the settlement funds indicates their intent to allocate the funds equally amongst themselves, and this is

consistent with their joint bargaining for and acceptance of the settlement, the language of the agreement, Mrs. Green's testimony regarding her damages (including the extensive skilled care she provided her husband), Mr. Green's trial testimony acknowledging the extent of his wife's damages and care,[8] and the Greens' Life Care Plan. According to the Life Care Plan, Mrs. Green provided Mr. Green with more than $1,000,000 in round-the-clock skilled care.

By contrast, cases in which settlements have been reallocated in a manner contrary to the settling parties' intent have involved situations for which *no* evidence existed to support the allocations. *See, e.g.*, *Rutland*, 400 S.C. at 216, 400 S.E.2d at 145 (agreeing with the court of appeals that the circuit court properly reallocated settlement funds to wrongful death claim where decedent's instant death involved no suffering or medical expenses, making any allocation to the survival action unreasonable); *Welch v. Epstein*, 342 S.C. 279, 312–13, 536 S.E.2d 408, 425–26 (Ct. App. 2000) (affirming trial court's reallocation of settlement proceeds and noting decedent slipped into a coma at the time of his respiratory arrest and never awoke; thus, there was no evidence that he consciously suffered and the survival claim was properly limited to medical expenses). Such is not the case here.

Moreover, we find Dr. Bauerle's argument ignores critical language in the Consent Order. The Consent Order stated, "Following an unpublished decision by the South Carolina Court of Appeals entered on February 3, 2016 in *Green*, Op. No. 2016-UP-052, and the subsequent denial of the Petitions for Rehearing by the Court of Appeals, the sum of $228,505.69 deposited with the Clerk of Court is no longer contested." Although Dr. Bauerle challenged the circuit court's denial of any setoff from the UIM settlement funds at the court of appeals, he did not pursue this argument before the supreme court. Thus, we agree with the Greens that an isolated sentence from a Consent Order directing the release of undisputed funds in the total amount of a UIM payout has no application here. We note the UIM settlement addressed injuries suffered in the car accident—not in relation to the malpractice claim—and the Consent Order simply referenced judgments still owed under a since-vacated allocation order. Notably, the Consent Order provided the Horry County Clerk of Court would continue to hold the remainder of the

---

[8] Mr. Green testified that Mrs. Green "omitted an awful lot" from her testimony about her daily schedule of caring for Mr. Green and their home. Mr. Green explained that she could not keep doing all that she did for him after she was diagnosed with heart problems and that she had been living with a hernia for two years because she refused to take time away from him to address it. He concluded his testimony by saying, "She's sacrificing her life for what is left of mine."

deposited funds in accordance with the terms and conditions set forth in the circuit court's December 11, 2014 "Order Granting Leave to Deposit Funds Into Court and Releasing Judgment Liens"—which specifically stated "the release of the judgment liens has no effect on any issues currently on appeal[,] including the amount of the verdicts to which the Plaintiffs are ultimately entitled, which will be determined by the appellate courts." This order further provided that if the Greens prevailed in the prior appeal, Dr. Bauerle and "the South Carolina Medical Malpractice Patients' Compensation Fund will be liable for the judgments as determined by the appellate courts." Accordingly, we reject this argument challenging the current allocation.

## II.  Loss of Consortium

Dr. Bauerle next argues the circuit court erred in calculating Mrs. Green's loss of consortium damages in a manner that exceeded the jury's verdict. As part of this argument, he contends the circuit court likewise "erred in concluding that such an allocation prevents the risk of a double recovery." We find no error.

Dr. Bauerle argues the circuit court should have abandoned its own analysis of the evidence altogether and relied solely on a comparison of the two jury verdicts to find "Mr. Green's injuries far exceeded the loss of consortium" suffered by Mrs. Green." *But see Riley*, 414 S.C. at 191, 777 S.E.2d at 828 (stating it is not "within the province of a reviewing court" to evaluate the reasonableness of "the relative percentage of settlement proceeds assigned to each claim"). As in *Riley,* we find the circuit court's allocation is supported by the evidence and is reasonable under the facts of this case. In *Riley*, the supreme court found the nonsettling defendant was entitled to set off only the $5,000 that the settlement agreement apportioned to the wrongful death claim, holding:

> The court of appeals erred in accepting Ford's invitation to reapportion the agreed-upon allocation of settlement proceeds based on the purported impropriety of an apportionment favoring the Estate. Settling parties are naturally going to allocate settlement proceeds in a manner that serves their best interests. That fact alone is insufficient to justify appellate reapportionment for the sole purpose of benefitting Ford. Here, the trial court-approved allocation is unquestionably reasonable under the facts. In fact, Ford has never suggested that $20,000 for the survival action is unreasonable. Ford's

> effort to invalidate the allocation of settlement proceeds based on a "percentages" analysis is manifestly without merit under these circumstances.

*Id.* at 197, 777 S.E.2d at 831.  Because the circuit court's allocation is supported by the evidence in the record and is reasonable under the circumstances of this case, we reject Dr. Bauerle's attempt to invalidate it based on his formula presented here.

Dr. Bauerle next urges us to find that a comparison of the Greens' jury verdicts governs the analysis of their respective rights to the Grand Strand settlement proceeds.  However, to do so would contravene the supreme court's prior opinion in this case.  *See Green*, Op. No. 2019-MO-026, at 6 ("The law requires the total amount paid by Grand Strand to be set off from the verdicts; however, we conclude the trial court's determination of the specific amounts to be set off from the verdicts was arbitrary, as the determination was based solely upon the ratios both verdicts bore to the whole.  The setoffs should be calculated based upon the entirety of relevant circumstances, not solely upon such a formula.  While these ratios may well be relevant to the ultimate determination of a proper setoff, they are not necessarily the sole relevant circumstance.").  The circuit court's allocation of the setoff here prevented a double recovery because each plaintiff's verdict was reduced by the $1,000,000 settlement amount apportioned to their claim.  *See* S.C. Code Ann. § 15-38-50 (2005 and Supp. 2022) (examining the effect of a release or covenant not to sue and the reduction of the claim against other tortfeasors).

Incidentally, this afforded Mr. Green a total recovery equal to his $2.3 million verdict and eliminated all of Dr. Bauerle's liability to Mrs. Green.  Dr. Bauerle seems to assert that Mrs. Green will receive a "windfall" if she is allowed to retain any settlement proceeds exceeding her jury award against him.  *But see* § 15-38-50; *Riley*, 414 S.C. at 197, 777 S.E.2d at 831 (2015) ("Settling parties are naturally going to allocate settlement proceeds in a manner that serves their best interests.  That fact alone is insufficient to justify appellate reapportionment for the sole purpose of benefitting [a nonsettling party].").  We find Dr. Bauerle's current suggested approach lacks support in our jurisprudence.  *See, e.g.*, *Riley*, 414 S.C. at 197, 777 S.E.2d at 831 ("Settlements are not designed to benefit nonsettling third parties.  They are instead created by the settling parties in the interests of these parties.  If the position of a nonsettling party is worsened by the terms of a settlement, this is a consequence of the refusal to settle.  A defendant who fails to bargain is not rewarded with the privilege of fashioning and ultimately extracting a benefit from the decisions of those who do." (quoting *Lard*, 901 N.E.2d at 1019)).

## III. Marital Property

Dr. Bauerle asserts the circuit court erred in failing to treat the verdicts and settlement proceeds as marital or joint property, as previously argued by the Greens, and in failing to apply the setoff as dictated by our supreme court's precedent under similar circumstances. We disagree.

In *Orszula v. Orszula*, 292 S.C. 264, 266, 356 S.E.2d 114, 114 (1987), our supreme court found that a workers' compensation award acquired during the marriage was marital property. This holding was based on our equitable distribution statute, now codified at section 20-3-630 of the South Carolina Code (2014), which provides all property acquired during a marriage is marital unless it falls within a statutorily delineated exception. *Id.* at 266, 356 S.E.2d at 114–15; *see also* § 20-3-630 (defining the term "marital property" as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation"). The supreme court has likewise found "proceeds of a personal injury settlement acquired during the marriage are marital property subject to the family court's jurisdiction." *Marsh v. Marsh*, 313 S.C. 42, 46, 437 S.E.2d 34, 36 (1993). The court's reasoning emphasized the need to give the family court "the flexibility to view each case based on the individual circumstances peculiar to the parties involved and to fashion a division of the parties' assets in a manner that is uniquely fair to the parties concerned." *Id.* Therefore, we do not disagree with Dr. Bauerle's position that "the characterization of settlement funds as consideration for either Mr. Green's damages or Mrs. Green's loss of consortium could have far-reaching implications if they were to divorce." However, this argument is now moot—Mr. Green has passed away and the interests of the Estate and its beneficiaries will never be subjected to a divorce proceeding. In any event, this case law is irrelevant in the absence of the dissolution of a marriage or some related equitable distribution of a couple's assets.[9]

---

[9] Dr. Bauerle also relies on *Broome v. Watts*, 319 S.C. 337, 461 S.E.2d 46 (1995), in support of his position that the Greens' settlement with Grand Strand as well as their jury verdicts should be deemed marital property. However, *Broome* addressed matters of UIM coverage and section 38-77-160 of the South Carolina Code (2015 and Supp. 2022), rather than section 15-38-50, the applicable statute here. *Id.* at 341, 461 S.E.2d at 48. The *Broome* court did not consider issues related to settlement allocation—it merely considered the total damages legally recoverable under contractual terms and the statutory purpose of UIM coverage.

This case required an analysis of the terms of a joint settlement agreement and the question of the Greens' intent to allocate the joint settlement equally amongst themselves. The settlement agreement includes the following language:

> Randall M. Green and Ann Green, for and in consideration of a lump sum payment of Two Million and 00/100 ($2,000,000.00) Dollars, paid on behalf of Grand Strand Regional Medical Center, LLC (hereinafter known as "Payer"), receipt whereof is hereby acknowledged, do hereby irrevocably bind themselves at no time or place to commence or prosecute any action or suit, or execute on any judgment on account of any claim for personal injury or negligence or any other claim or claims, actions or causes of action, including medical expenses, against the Payer, by reason of the alleged negligence in Mr. Green's treatment, specifically including but not limited to the lawsuit presently pending in the Court of Common Pleas for Horry County, Civil Action number 2011-CP-26-7403.

The Greens' decision not to specifically allocate the joint settlement proceeds supports their assertion that they intended to allocate it equally amongst themselves. This is consistent with the language of the agreement, Mrs. Green's testimony regarding her damages and the care she provided for her husband, Mr. Green's testimony recognizing the extent of his wife's care and damages, and the couple's Life Care Plan detailing the skilled care Mrs. Green had provided to Mr. Green by the time of the Grand Strand settlement.

We find no error in the circuit court's allocation.

**Conclusion**

For the foregoing reasons, the order of the circuit court is

**AFFIRMED.**

**GEATHERS, J. and HILL, A.J. concur.**