## THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. and Jack Love, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

Island Pointe, LLC; Complete Building Corporation; Tri-County Roofing, Inc.; Creekside, Inc.; American Residential Services, LLC d/b/a ARS/Rescue Rooter Charleston; Andersen Windows, Inc.; Atlantic Building Construction Services, Inc., n/k/a Atlantic Construction Services, Inc.; Builder Services Group, Inc. d/b/a Gale Contractor Services; Novus Architects, Inc., f/k/a SGM Architects, Inc.; Tallent and Sons, Inc.; WC Services, Inc.; CRG Engineering, Inc.; CertainTeed Corporation; Kelly Flooring Products, Inc, d/b/a Carpet Baggers; Cornerstone Construction and Mark Malloy d/b/a Cornerstone Construction; Miracle Siding, LLC and Wilson Lucas Sales d/b/a Miracle LLC; Mark Palpoint a/k/a Micah Palpoint; Elroy Alonzo Vasquez; Chris a/k/a John Doe 61; Alderman Construction; Stanley's Vinyl Fence Designs; Cohen's Drywall Company, Inc.; Mosely Concrete; H and A Framing Construction, LLC a/k/a H&A Framing Construction, LLC and d/b/a H and A Framing, LLC, H&A Construction, and Hand A Construction; JMC Construction, Inc., JMC Construction, LLC, John Doe 1-15, Defendants,

of which Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. and Jack Love, individually, and on behalf of all others similarly situated are the Respondents,

and

Tri-County Roofing, Inc. is the Appellant.

Appellate Case No. 2019-001790

Appeal From Charleston County
Jennifer B. McCoy, Circuit Court Judge

Opinion No. 5996
Heard February 14, 2023 – Filed June 28, 2023

**AFFIRMED IN PART AND REVERSED IN PART**

Christian Stegmaier and James Lloyd Williams, both of
Collins & Lacy, PC, of Columbia, for Appellant.

Stephanie D. Drawdy and Joshua Fletcher Evans, both of
Justin O'Toole Lucey, P.A., of Summerville; Edward D.
Buckley, Jr., of Clement Rivers, LLP, of Charleston; and
Anna Scarborough McCann and Justin O'Toole Lucey,
both of Justin O'Toole Lucey, P.A, of Mount Pleasant, all
for Respondents.

**KONDUROS, J.:**  In this condominium construction defect case, subcontractor defendant Tri-County Roofing, Inc. (TCR) appeals the trial court's decision regarding setoff.  TCR contends the trial court erred in not setting off the entirety of a posttrial settlement between the plaintiffs and codefendant general contractor Complete Building Corporation (CBC).  TCR further contends the trial court erred in denying its motion for a complete setoff of pretrial settlements between the plaintiffs and several other defendants involved in the project.  We affirm in part and reverse in part.

**FACTS/PROCEDURAL HISTORY**

In 2005, Island Pointe, LLC, as developer, entered into a contract with CBC for the construction of forty duplex condominium units[1] as a project called Palmetto Pointe at Peas Island, located near Folly Beach. CBC subcontracted with TCR to install the siding and roofing. Later, the installation of waterproof membranes on decks was added by change order. TCR's general scope of work included the roofing, siding, trim, and waterproofing the decks, and their bid included fascia, soffits, gutters, and downspouts. TCR hired subcontractors to complete its obligations to CBC,[2] including Eloy Alonzo Vazquez and Miracle Siding, LLC (Miracle). Vazquez was responsible for roofs and waterproof membranes, and Miracle was responsible for siding on seventeen of the twenty buildings. The units were built during 2006 and 2007.

In late 2014 to early 2015, the Palmetto Pointe Condominium Property Owners Association (the Association) noticed ongoing leaking issues related to the roofing. The Association hired a company to investigate. Later, an engineer was hired and discovered building code violations and other construction deficiencies.

On February 13, 2015, the Association and a homeowner, as class representative,[3] (collectively, Plaintiffs) filed a complaint. The complaint alleged negligence, gross negligence, and breach of implied warranty against CBC, TCR, and other subcontractors. The complaint requested actual and punitive damages. TCR answered and cross-claimed against its subcontractors. Plaintiffs amended their complaint twice and added TCR's subcontractors as defendants. CBC, the developer, and Novus Architects filed cross-claims against other defendants.

Prior to trial, numerous defendants reached settlement agreements with Plaintiffs totaling in aggregate between $4,725,000 and $5,012,500. The parties agree some of the settlements were for damages that were removed from the trial of the case.

---

[1] Eventually, two more duplex buildings were built. Those were built at a later time by different entities and were not at issue in these proceedings.
[2] TCR did not do any actual work on the construction of the units; it was a middleman between CBC and TCR's subcontractors and also supervised those subcontractors' work.
[3] That representative was later replaced by another homeowner, Jack Love, who is a respondent in addition to the Association in this appeal. The class was never certified.

Those settlements total $1,407,500 and have been referred to as issue release settlements.[4]

In addition to the issue release settlements, Plaintiffs entered into several other settlement agreements. Plaintiffs settled with Novus Architects, Inc. f/k/a SGM Architects, Inc. for $650,000,[5] and with Cohen's Drywall Company, Inc. (Cohen's) for $125,000 for work related to installing insulation and drywall. Plaintiffs settled with framing subcontractor, Atlantic Building Construction Services, Inc. n/k/a Atlantic Construction Services, Inc. for $700,000 and with a subcontractor to Atlantic, H and A Framing Construction, LLC, (H and A) for $500,000.[6]

Trial began on May 6, 2019, with eight remaining defendants: Stanley's Vinyl Fence Designs; JMC Construction, Inc. (JMC); Island Pointe; CBC; TCR; Miracle; Vasquez; and W.C. Services, Inc. Prior to the verdict, three defendants left the case. Stanley's settled on the second day of trial for $295,000. The trial court dismissed JMC at the directed verdict stage, and Plaintiffs released their claims against Island Pointe prior to closing arguments.

During trial, Plaintiffs presented testimony from various experts demonstrating numerous code violations and faulty workmanship. Plaintiffs' expert, Russell Mease, testified as to the scope of work that would be required to remedy the

---

[4] Most of these settlement agreements are included in the record. For a few, the record only contains emails agreeing to settlement terms. The following settlements are referred to as issue release settlements: (1) American Residential Services, LLC d/b/a ARS/Rescue Rooter Charleston, HVAC, $795,000; (2) Andersen Windows, Inc.; window product manufacturer, $200,000; (3) Tallent and Sons, Inc., grading & paving, $195,000; (4) Kelly Flooring Products, Inc. d/b/a Carpet Baggers, carpet and wood flooring installer, $25,000; (5) Alderman Construction, interior trim & railings, $75,000; and (6) Mosley Concrete, concrete, $95,000. Plaintiffs also settled with Builder Services Group, Inc. d/b/a Gale Contractor Service, which had supplied and installed fireplaces, for $22,500.

[5] The trial court's posttrial order states that the settlement amount was $600,000, but this appears to be incorrect.

[6] Plaintiffs entered into a few more pretrial settlements that were not issue releases but are not at dispute on appeal: Creekside, Inc., $150,000, painting and caulking; Certainteed, Corp., $35,000, manufacturer of roofing shingles, siding, and trim; and Cornerstone Construction, $150,000, siding and flashing. In the settlement agreement with Cornerstone, Plaintiffs agreed to grant TCR a setoff for the amount paid by Cornerstone for TCR's release of its claims against Cornerstone.

defects at Palmetto Pointe. Much of the work he described required significant demolition and reconstruction in order to rectify the buildings' defects. Plaintiffs' damages expert, Jerry Handegan, testified regarding an estimate he prepared after being provided with Mease's scope of work evaluation. Handegan's original estimate, prepared in December of 2017, totaled $15,257,512. A hand-revised estimate, removing certain elements of damage and other revisions, totaled $13,428,826 and was completed in May of 2019.

CBC hired Alan Schweickhardt[7] to investigate the alleged defects at Palmetto Pointe. Schweickhardt's testimony focused on deficiencies in the areas covered by TCR and its subcontractors, namely roofing, decking, and siding as a water intrusion investigation. Steven Watkins prepared an estimate for the scope of work investigated by Schweickhardt using more targeted repairs and arrived at a cost of $1,898,163.27.

Mark Poyner testified as the operations manager for TCR. He stated the contract between TCR and CBC for was roofing, siding, and deck waterproofing and totaled $1,382,558.24. He also testified the amount of the contract between CBC and Palmetto Pointe was $11,578,454. His testimony addressed, among other things, the liability of CBC and the designers of the project for the resultant defects.

James Lawrence "Larry" Elkin was the damages expert who evaluated the damages as to Miracle Siding and Vasquez. Elkin testified the work on the issues causing the water intrusion, including flashing and waterproofing, should have been coordinated, supervised, and tested—shifting ultimate responsibility back up the contracting chain to TCR and CBC.

In closing, Plaintiffs requested $12.8 million in damages comprised of $12.4 million in repair costs and $800,000 in lost use. CBC questioned Handegan's damages estimate and encouraged the jury to go line by line to see which items should be included and which items should be reduced based on the timeline of the revised estimate.[8] After reviewing some of these items with the jury, CBC suggested $6.5 million would be the remaining amount of damages.

---

[7] Schweickhardt, Watkins, and Poyner are all listed as a plaintiff's witness presumably because of the cross-claims between CBC and TCR.
[8] Plaintiffs argued some costs should be reduced because they were based on renting equipment etc. for a shorter period of time than originally anticipated.

The jury returned a verdict in W.C. Services' favor. As to the remaining defendants, the jury found actual damages in the amount of $6.5 million. The jury also found CBC was grossly negligent and awarded punitive damages in the amount of $500,000. It likewise found TCR grossly negligent and awarded $500,000 in punitive damages. After the verdict form was received, the trial court, pursuant to section 15-38-15 of the South Carolina Code (Supp. 2022), crafted a special verdict form for the jury in which it would apportion the percentage of responsibility for the $6.5 million among the remaining defendants. However, because CBC and TCR had been found grossly negligent, their liability could not be apportioned pursuant to subsection 15-38-15(F).[9] The jury found Miracle and Vasquez each responsible for 5% of the actual damages, or $325,000 each. CBC and TCR were therefore jointly and severally liable for the remaining 90% of actual damages—$5,850,000. The trial court gave the parties ten days to file posttrial motions.

Prior to the hearing on posttrial motions and twenty-one days after the conclusion of the trial, Plaintiffs entered into a settlement with CBC for $2,137,500. The parties allocated $1 million of the settlement proceeds to items not discussed at trial and $637,500 to items that were considered by the jury at trial. $500,000 of the settlement proceeds were earmarked for CBC's punitive damages.

TCR filed multiple posttrial motions, including ones for new trial nisi remittitur, new trial absolute, judgment notwithstanding the verdict, elimination of punitive damages, and setoff. Both parties prepared setoff recommendation charts. The trial court issued a Form 4 Order denying all of TCR's motions except the motion for setoff, which it granted in the amount conceded to by Plaintiffs—$1.67 million. TCR filed a motion for reconsideration that was primarily devoted to the issue of setoff. The trial court did not alter the amount of setoff but offered a somewhat more detailed explanation for its rulings. The trial court held a plaintiff is entitled to allocate settlement funds in the most advantageous way to it even if that may disadvantage a nonsettling tortfeasor like TCR. *See Riley v. Ford Motor Co.*, 414 S.C. 185, 197, 777 S.E.2d 824, 831 (2015). Additionally, the trial court concluded TCR had not met its burden of establishing a dollar-for-dollar setoff by establishing the settlements with other defendants were for the same injury. This appeal followed.

---

[9] § 15-38-15(F) ("This section does not apply to a defendant whose conduct is determined to be wilful, wanton, reckless, grossly negligent, or intentional or conduct involving the use, sale, or possession of alcohol or the illegal or illicit use, sale, or possession of drugs.").

**GENERAL LAW REGARDING SETOFF**

"A nonsettling defendant is entitled to credit for the amount paid by another defendant who settles." *Welch v. Epstein*, 342 S.C. 279, 312, 536 S.E.2d 408, 425 (Ct. App. 2000). "[S]uch a credit is to prevent an injured person from obtaining a second recovery of that part of the amount of damages sustained which has already been paid to him. In other words, there can be only one satisfaction for an injury or wrong." *Id.* (citation omitted). "Allowing this credit prevents an injured person from obtaining a double recovery for the damage he sustained, for it is 'almost universally held that there can be only one satisfaction for an injury or wrong.'" *Rutland v. S.C. Dep't of Transp.*, 400 S.C. 209, 216, 734 S.E.2d 142, 145 (2012) (quoting *Truesdale v. S.C. Highway Dep't*, 264 S.C. 221, 235, 213 S.E.2d 740, 746 (1975), *overruled on other grounds by McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985)).

"The right to setoff has existed at common law in South Carolina for over 100 years." *Riley*, 414 S.C. at 195, 777 S.E.2d at 830. "In 1988, these equitable principles were codified as part of the South Carolina Contribution Among Tortfeasors Act (the Act), [sections] 15-38-10 to -70 [of the South Carolina Code] (2005 and Supp. 2014)." *Id.* "[T]he Act represents the Legislature's determination of the proper balance between preventing double-recovery and South Carolina's 'strong public policy favoring the settlement of disputes.'" *Id.* at 196, 777 S.E.2d at 830 (quoting *Chester v. S.C. Dep't of Pub. Safety*, 388 S.C. 343, 346, 698 S.E.2d 559, 560 (2010)).

Section 15-38-50 provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

> (2) it discharges the tortfeasor to whom it is given from
> all liability for contribution to any other tortfeasor.

*Id.*

> [A] critical feature of the [Act] is the codification of the
> empty chair defense—a defendant 'retain[s] the right to
> assert another potential tortfeasor, whether a party or not,
> contributed to the alleged injury or damages'—which
> necessarily contemplates lawsuits in which an allegedly
> culpable person or entity is not a party to the litigation
> (hence the chair in question being 'empty').

*Smith v. Tiffany*, 419 S.C. 548, 557, 799 S.E.2d 479, 484 (2017) (quoting § 15-38-15(D)).

"Despite a defendant's entitlement to setoff, whether at common law or under section 15-38-50, any 'reduction in the judgment must be from a settlement for the same cause of action.'" *Riley*, 414 S.C. at 196, 777 S.E.2d at 830 (quoting *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 113, 498 S.E.2d 395, 407 (Ct. App. 1998)). "Thus, where a settlement involves more than one claim, the allocation of settlement proceeds between various causes of action impacts the amount a non[]settling defendant may be entitled to offset." *Id.*

"When the settlement is for the same injury, the nonsettling defendant's right to a setoff arises by operation of law. Under this circumstance, '[s]ection 15-38-50 grants the court no discretion . . . in applying a set-off.'" *Smith v. Widener*, 397 S.C. 468, 472, 724 S.E.2d 188, 190 (Ct. App. 2012) (alterations in original) (citation omitted) (quoting *Ellis v. Oliver*, 335 S.C. 106, 112-13, 515 S.E.2d 268, 271-72 (Ct. App. 1999)). Nevertheless, the trial court has discretion in determining the amount of setoff when the settlement involves more than one claim. *See Glenn v. 3M Co.*, Op. No. 5975 (S.C. Ct. App. filed Apr. 5, 2023) (Howard Adv. Sh. No. 13 at 102, 143) ("*Riley* [,414 S.C. at 196, 777 S.E.2d at 830] indicates that the circuit court has discretion as to merely the amount to be setoff against the verdict when the settlement involves multiple claims.").

As to allocation of settlement funds by and between settling parties, our supreme court has agreed with the following approach taken by the Illinois Court of Appeals:

> A plaintiff who enters into a settlement with a defendant gains a position of control and acquires leverage in relation to a nonsettling defendant. This posture is reflected in the plaintiff's ability to apportion the settlement proceeds in the manner most advantageous to it. Settlements are not designed to benefit nonsettling third parties. They are instead created by the settling parties in the interests of these parties. If the position of a nonsettling defendant is worsened by the terms of a settlement, this is the consequence of a refusal to settle. A defendant who fails to bargain is not rewarded with the privilege of fashioning and ultimately extracting a benefit from the decisions of those who do.

*Riley*, 414 S.C. at 197, 777 S.E.2d at 831 (quoting *Lard v. AM/FM Ohio, Inc.*, 901 N.E.2d 1006, 1019 (Ill. App. Ct. 2009)).

When a plaintiff removes certain elements of damages from its case because of a pretrial settlement, the court may find the defendant tortfeasor has received the benefit of a setoff based on the plaintiff's lowered request for damages. *See Oaks at Rivers Edge Prop. Owners Ass'n. v. Daniel Island Riverside Devs., LLC*, 420 S.C. 424, 442, 803 S.E.2d 475, 484 (Ct. App. 2017) (affirming the trial court's denial of setoff, reasoning "Appellants already received the benefit of the settlements" totaling $4,260,497.93 when the plaintiffs reduced their damages request by that amount).

## ANALYSIS

### I. Setoff For Posttrial Settlement With CBC

To examine the setoff of the posttrial settlement between CBC and Plaintiffs, the $2,137,500 at issue must be broken down into separate components. First, the $1 million in insurance proceeds from a July 2018 agreement between Plaintiffs, CBC, and an insurer of CBC's was allocated by those parties as follows:[10]

---

[10] This agreement was denominated a "Mediated Partial Payment" and incorporated a "Covenant-Not-to-Execute." The insurer paid $1 million, which "constitute[d] a credit in the same amount against any judgement obtained against CBC." The agreement released the insurer from any further obligation to CBC under the policy, primarily a duty to defend, and provided Plaintiffs would not

- $900,000 - HVAC and electrical

Second, an additional $1,137,500 was allocated as follows:

- $137,500 - exterior railings[12]
- $100,000 - fire separation penetrations other than those caused by the location of the fire sprinkler distribution system within the fire rated wall separating the units within each building
- $400,000 - framing work to provide code-compliant access to HVAC equipment
- $500,000 - punitive damages

In declining to grant TCR a setoff for the entirety of the settlement, the trial court relied on *Riley v. Ford Motor Co.*, 414 S.C. 185, 197, 777 S.E.2d 824, 831 (2015),

---

[12] Plaintiffs conceded and the trial court allowed this portion of the CBC settlement as a setoff to TCR.

[13] We caution the trial bench that allocations in settlements are not simply to be accepted but are to be examined to ensure a measure of fairness to all parties. As the trial court and Plaintiffs have pointed out, our courts have generally recognized Plaintiffs are permitted to allocate settlement proceeds as they determine, even if that might be detrimental to a nonsettling defendant. *Riley*, and the Illinois case on which it relies, contemplate the possibility that agreed-upon settlement allocations, largely driven by plaintiffs, may not always be appropriate. *See Riley*, 414 S.C. at 197, 777 S.E.2d at 831

*per se*

portion of the settlement allocated to punitive damages. We will address each component of the CBC postverdict settlement in turn.

### A. The $1 Million Insurance Proceeds from July 2018 Mediated Partial Payment/Covenant-Not-to-Execute

TCR contends the $1 million insurance payment allocated to HVAC, electrical, drainage, and fireplaces—matters for which damages were not sought at trial—was a settlement for the same injury represented by the verdict in the case. Therefore, it was entitled to a setoff. *See* § 15-38-50 (explaining right to setoff arises when two parties are liable in tort for the same injury). Plaintiffs claim these damages did not represent the same injury and because they did not seek damages for HVAC, electrical, drainage, and fireplaces at trial, TCR is not entitled to a setoff. We agree with Plaintiffs.

In *Oaks at Rivers Edge*, 420 S.C. at 432, 803 S.E.2d at 479, the developer and the construction manager of condominiums sought a setoff for a pretrial settlement with other tortfeasors in the construction defect case. The settlement contemplated damages resulting from the "design, manufacture, sale, and installation of the windows, window units, exterior doors, exterior door units, railings, balustrades, framing, and caulking." *Id*. at 434, 803 S.E.2d at 480. "However, [because the plaintiffs] removed from their claim the repairs necessitated by the damage caused by the window installation," the court determined the developer and construction manager "have already received a reduction in claims as contemplated by section 15-38-50 . . . ." *Id*. at 441, 803 S.E.2d at 484.

As in *Oaks at Rivers Edge*, by eliminating repair costs for HVAC, electrical, drainage, and fireplaces from its damages estimate, Plaintiffs effectively gave TCR (and all the defendants at trial) a setoff and thus the trial court did not err in declining to give a second reduction by setting off this amount from the verdict. Therefore, we find the trial court did not err in denying the $1 million payment as a setoff.[14]

---

1018)). *See also Rutland*, 400 S.C. at 220, 734 S.E.2d at 147 (Pleicones, J., dissenting) (suggesting the court's reallocation of settlement proceeds is inappropriate when "

[14] TCR does not maintain the $1 million payment was actually unallocated based on the fact this document was executed and the sum paid to Plaintiffs in July 2018—well before the full posttrial settlement between Plaintiffs and CBC.

## B. $637,500 of CBC Settlement Allocated for HVAC access, fire separation penetration, and exterior railings

Here, unlike the $1 million payment allocation, the $637,500 allocation was for issues that Plaintiffs put before the jury.[15]  In discussing pretrial matters, Plaintiffs indicated the issue regarding lack of access to the HVAC units due to framing mistakes was "still in the case."  Furthermore, during trial, Plaintiffs questioned their expert, Mease, about the lack of access to the HVAC units due to improper framing and introduced photographs documenting the issue, noting it was a code violation.  Likewise, Plaintiffs questioned Mease regarding fire separation penetrations.  Mease testified numerous firewall penetrations were visible in the attics of the condominium units due to sprinkler installation, framing, ducting, and plumbing.  Plaintiffs introduced photographs documenting instances of these errors.  Because these issues were raised and discussed at trial, Plaintiffs cannot make the same pretrial damages reduction argument they persuasively made in section IA.

TCR contends the entirety of Plaintiffs' settlement with CBC should be set off from the verdict against it because the settlement is in reality a satisfaction of a judgment, as opposed to an allocated settlement.  We agree.  Responding to this contention, Plaintiffs maintain that by settling prior to the entry of judgment, CBC was never subject to a judgment and therefore TCR's argument fails.  Plaintiffs misconstrue the crux of TCR's argument.  While CBC was not technically subject to a judgment, that is not what is required for TCR to be entitled to setoff.  Setoff is premised on a settlement corresponding to the same injury. *See Widener*, 397 S.C. at 471-72, 724 S.E.2d at 190 ("[B]efore entering judgment on a jury verdict, the court must reduce the amount of the verdict to account for any funds previously paid by a settling defendant, so long as the settlement funds were paid to compensate the same plaintiff on a claim for the same injury.").  In this case, TCR and CBC were found jointly and severally liable for *all* the injuries put before the jury including damages related to framing for HVAC access and fire separation penetrations not related to sprinkler installation.  The injuries addressed by the jury's verdict cannot now be parsed out and separated simply because Plaintiffs settled their claim against CBC prior to the entry of judgment. *See Armstrong v.*

---

Likewise, TCR does not allege apportioning this part of the funds to matters not discussed at trial was in bad faith.  Regardless, TCR was not found liable for damages related to HVAC, electrical, flooring, concrete, drainage, or interior railings as those were not included in Plaintiff's request for damages at trial.

[15] Plaintiffs concede a setoff of the full $137,500 allocated to exterior railings.

*Collins*, 366 S.C. 204, 227, 621 S.E.2d 368, 379 (Ct. App. 2005) (declining to "speculate as to how the jury allocated damages resulting from a general verdict"). Therefore, Plaintiffs would receive a double recovery if both TCR were to pay for these injuries and CBC's settlement compensated them for the same injuries. Accordingly, we conclude the trial court erred in denying a setoff to TCR for the remaining $500,000 of the CBC settlement allocated to framing for HVAC access and fire separation penetrations not related to sprinkler installation.

## C. Punitive Damages

Finally, TCR argues it should receive a $500,000 setoff for the punitive damages portion of the CBC settlement because, pursuant to *Widener*, punitive damages are part of the same injury as actual damages in the context of setoff. Plaintiffs contend the punitive damages award against CBC and TCR constitute two separate injuries so that the trial court properly denied TCR's setoff request. We agree with Plaintiffs.

In *Widener*, the plaintiff sued several defendants under several theories, all seeking $35,410.38 in damages for wrongfully denying her access to funds from her late husband's retirement account. 397 S.C. at 471, 724 S.E.2d at 190. The plaintiff settled with one defendant for $35,410.38 and proceeded to trial against two other defendants. *Id*. The jury returned a verdict of $35,410.38, and the two nonsettling defendants asked for a setoff. *Id*. The plaintiff claimed her settlement had been solely for punitive damages. *Id*. at 472, 724 S.E.2d at 190-91. In reversing the denial of the setoff request, this court, in a 2-1 opinion stated: "[W]e hold that when a plaintiff seeks actual and punitive damages arising out of the same injury, the two types of damages are part of the same claim for purposes of determining whether a nonsettling defendant is entitled to a setoff to account for funds paid to the plaintiff by a settling defendant." *Id*. at 470, 724 S.E.2d at 189. The court further found the plaintiff's position the settlement was solely for punitive damages was not credible. *Id*. at 474, 724 S.E.2d at 191-92.

In this case, if the jury's verdict evidenced a single punitive damages award against TCR and CBC jointly and severally, *Widener* might dictate TCR is entitled to a setoff and the funds would not be insulated by the fact that the punitive damages award against CBC was not carried to final judgment. However, the form of the jury's verdict indicates it found TCR and CBC each individually liable for a punitive damages award. Although section 15-32-520(G) of the South Carolina Code (Supp. 2022) addresses a bifurcated damages trial, it is still relevant: "In an action with multiple defendants, a punitive damages award must be specific to each defendant, and each defendant is liable only for the amount of the award made

against that defendant."  Furthermore, in *McGee v. Bruce Hosp. Sys.*, 344 S.C. 466, 545 S.E.2d 286 (2001), the court addressed the situation in which two joint tortfeasors face punitive damages.

> While "it is almost universally held that there can be only one satisfaction for an injury or wrong," allowing petitioner to seek punitive damages against respondent will not result in petitioner having a double recovery. Although [one co-defendant] has paid the punitive damages levied against him, those punitive damages do not reflect the amount of punitive damages for which a jury may find that respondent is responsible.

*Id*. at 471-72, 545 S.E.2d at 288-89 (footnote omitted).

The facts of this case call for application of the principles set forth in section 15-32-520(G) and *McGee* because both TCR and CBC proceeded to a verdict on the punitive damages issue *and* the verdict indicated separate exemplary damages for each tortfeasor's conduct.  Accordingly, we agree with the trial court's refusal to set off the punitive damages award.

## II. Setoff For Pretrial Settlements

Next, we turn our attention to setoff involving pretrial settlements.  TCR maintains the trial court erred in failing to set off the jury verdict with the full amount of the settlements for damages not specifically removed from the trial of the case as issue release items.  It asserts whatever damages were not explicitly removed from trial by the issue releases were presented to the jury through testimony and exhibits.  It contends because a general contractor is responsible for the entire construction project and CBC was a defendant throughout the entire trial, any area not covered by an issue release was necessarily included.[16] We disagree.   The trial court awarded the following setoffs:

---

[16] Plaintiffs contend any argument TCR asserts suggesting it is entitled to setoff as a matter of equity or pursuant to the common law is unpreserved.  We disagree.  At the posttrial hearing, near the beginning of TCR's setoff argument, TCR stated, "back to setoff.  As Your Honor is aware, for over 180 years from the common law and at least since the [19]80's according to statutory law, setoff is a required by the law."  Even though the trial court did not explicitly refer to common law setoff in its order, the point was sufficiently addressed so as to preserve it for appellate

| Party | Settlement | Plaintiffs Concede for Setoff |
|---|---|---|
| Atlantic Building (framing) | $700,000 | $75,000 |
| Novus (architect) | $650,000 | $65,000 |
| Cohen's (drywall) | $125,000 | $62,500 |
| H and A (framing) | $500,000 | $50,000 |

Plaintiffs assert TCR cannot prove the verdict overlaps with the same damages or claims compensated by these settlements. They argue TCR is not entitled to any further setoff for pretrial settlements than was already awarded and that TCR has already benefited from three damage reductions, to wit: (1) Plaintiffs reduced their damages at trial and only asked the jury for compensation related to defects and damages resulting from work performed by the defendants who remained in the case at the time of trial (to the exclusion of settled issues), and further reduced their damages by an additional $1 million during closing arguments to account for untried issues; (2) the defendants asserted the empty chair defense to the jury, which awarded Plaintiffs a further reduced amount; and (3) TCR received a $1.67 million setoff from the trial court to account for any overlap between pretrial and posttrial settlements and the jury's verdict. Plaintiffs also assert they have not received a double recovery because their expert attributed $8.375 million in damages to TCR and the trial court entered the judgment against TCR for $4.83 million.

As an initial point, the trial court's order alludes to caselaw involving the *settling parties'* allocation of settlement funds, and suggests that the allocation by those parties is entitled to a certain amount of deference. The trial court's order, quoting *Riley* concluded it could not "disturb the settling parties' agreed-upon allocation solely because the apportionment may have been advantageous to the [plaintiff]." 414 S.C. at 196, 777 S.E.2d at 831. However, in this case, no allocations appeared

review. *See Johnson v. Roberts*, 422 S.C. 406, 412, 812 S.E.2d 207, 210 (Ct. App. 2018) ("It cannot be said that Appellant's arguments are clearly preserved. But in light of the foregoing, it also cannot be said that Johnson's arguments are clearly unpreserved. In these situations, 'where the question of issue preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation.'" (quoting *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 333, 730 S.E.2d 282, 287 (2012) (Toal, C.J., concurring in result in part and dissenting in part))).

in the pretrial settlement agreements. Rather, these amounts were concessions Plaintiffs made in response to TCR's setoff motion. In spite of this potential conflation, we do not believe the trial court abused its discretion in awarding the setoffs for the pretrial settlements as it did.

Defendants mentioned the work of the architect, Novus, a number of times at trial, ostensibly as part of the empty-chair defense.[17] There were references to the way the roof was designed as being one cause of leaking.[18] Also, testimony was given that the subcontractors made requests for information to the architect that were never answered. Additionally, there was testimony about the complicated intersections of the posts and roofs and decks.[19] The testimony presented supports a finding that some measure of negligence by Novus in its planning impacted TCR's performance resulting in leaking in the condominiums. However, in the absence of further testimony or evidence as to the extent of Novus's responsibility for injuries encompassed in the jury's verdict, we find the trial court did not abuse its discretion in granting a 10% setoff.

Regarding the Atlantic and H and A settlements, framing was mentioned briefly at trial although the parties disagree as to how much that issue was actually before the jury.[20] Plaintiffs argue the framing settlements covered two principle issues—

---

[17] In particular, Plaintiffs maintain TCR pointed the finger at the architect repeatedly during closing arguments and referenced the original damages estimate to assert certain parts of the damages should be ignored.

[18] The record contains testimony that the amount of slope of the roofs was an architectural design and was unusual. This is a separate issue from the slope of the decks, which is discussed in regards to the framers next.

[19] Elkin testified "my initial takeaway was that some of these were some pretty challenging intersections. . . . [A]ny time you have two different materials interface it gets to be -- it is a hard -- it can be a hard transition to make to keep it watertight. In this instance when you have three different materials coming together in different planes it becomes that much harder to make sure it is constructed in a watertight manner."

[20] Poyner, of TCR, testified as follows:

> Q. Do you recall what it looked like out there at this
> time period with some of the siding coming off?
> A. Well, the -- when this came out, obviously some of
> the buildings were -- the exteriors were fairly far along,

even having been painted, and the siding had to be -- they asked me to remove a section of the siding.

Q. Now, was the siding being removed for your installation issues?

A. It was not.

Q. Was it a framing issue?

A. Yes, sir, it was.

Q. Okay, and you weren't involved in the framing issue, right?

A. No, sir.

Q. And so you don't -- you're not going to offer any testimony as to what they were looking at with the framing?

A. No, sir.

He also testified:

A piece of plywood does not do weather -- does not do well when it's weathered. So, very early on when they would frame up those decks, we would come in and actually put the base coat on and get the product up the post.

Now, in, in going back and looking, I know that there were some posts that were structural and some that were just ornamental. You couldn't tell the difference, but the difference was the structural posts were put in at the beginning when the building was framed. The ornamental posts weren't always put in at the same time that they built the deck. Were, you know, framing up the house and even when the waterproofing on -- some, some instances they came back and put those posts after we had already waterproofed the deck.

Q. And you were not a framer who installed those posts?

A. No, sir.

Q. The lumber that is out there on the decks, is that pressure treated?

shear walls and window installation—and that these issues were not presented to the jury at all. According to Plaintiffs, the record shows the only possible framing scope litigated that might relate to TCR's "siding work" was the installation of the windows' caulk joint. Plaintiffs conceded and the trial court accepted a 10% setoff of the verdict for the Atlantic and H and A settlements, respectively, to allow for any potential overlap; accordingly, the jury verdict was set off by $75,000 for Atlantic and $50,000 for H and A. While TCR asserts some testimony was presented that framing contributed to the faulty waterproofing of the decks, we cannot conclude the trial court abused its discretion in declining to award TCR a setoff for the full amounts of the Atlantic and H and A settlements.[21]

---

> A. I do not believe it was. I think the first one they did - - once again on the River Birch -- I think they had tried to install treated lumber, but the manufacturer's instructions say, I believe, not to use treated lumber.
> Q. You're talking about the sheathing on the ---
> A. That's correct.
> Q. --- the posts? Are those treated?
> A. They are.
> Q. Okay, and the, the, the actual framing parts of the, the joists, those are treated?
> A. As far as I know.

[21] Poyner testified on cross-examination by one of the codefendants:

> Q. So, this is simply if any work that's found not to in conformance with the plans and specifications is discovered, it is to be redone and done correctly, correct?
> A. That's correct.
> Q. All right, and, in fact, you witnessed such a situation with regard to the slope of the decks on this project, did you not?
> A. That is correct.
> Q. Is it true that a gentleman named Gary Stanley was the superintendent for [CBC]?
> A. Yes, he was.
> Q. And he was the one that was on-site most of the time for [CBC]?
> A. That and later they had brought Joe Brown as well.

Finally, regarding the Cohen's settlement, Plaintiffs assert it involved drywall and insulation issues. Plaintiffs contend drywall issues were litigated at trial but insulation issues were not and thus they proposed the $125,000 settlement be divided equally between the drywall and insulation so that each was attributed $62,500. The court reduced the final judgment by $62,500 due to the potential of drywall overlap. The testimony included in the record only contains a few references to insulation.[22] Accordingly, we conclude the trial court did not abuse its discretion in awarding a setoff in this amount for this settlement.

**CONCLUSION**

In sum, we conclude the trial court did not abuse its discretion in refusing to set off the entirety of the pretrial settlements between Plaintiffs and Novus, Atlantic, H and A, and Cohen's. Further, we find the trial court did not err in denying TCR's request for setoff as to the $1 million of the CBC settlement allocated to matters not raised at trial or for the $500,000 allocated for punitive damages. We reverse the portion of the trial court's order denying TCR a setoff for the $500,000 of the

---

Q. Okay, and Mr. Stanley, at least as part of his duties, would also spot check and come behind each of the subcontractors to look at their work, did he not?
A. Yes, sir.
Q. Okay, and isn't it true that Mr. Stanley, before the waterproofing was put down, he would check the slope of the decks? Isn't that, correct?
A. I believe so, yes, sir.
Q. And, in fact, you saw him use a level to look at the decks to make sure they had proper slope?
A. I did.
Q. And, in fact, there was -- if a deck was discovered not to have a proper slope, Mr. Stanley would make the framer redo it before you put your waterproofing on the deck, correct?
A. That's correct.

[22] Elkin's testimony refers to insulation but it does not appear to be referencing any problem with insulation. Schweickhardt mentioned damaged insulation in his testimony but he appears to have attributed the damage to the leaking from flashing, not due to any issue with the insulation.

$637,500 portion of the CBC settlement not already setoff for exterior railings. Accordingly, the trial court's order is

**AFFIRMED IN PART AND REVERSED IN PART.**

**HEWITT and VINSON, JJ., concur.**